■ CONSTANCE SIMPSON, Individually and as Administratrix of the Estate of RICHARD SIMPSON, SR., Deceased, Respondent, v EUGENE K. BELLEW et al., Appellants.—In an action to recover damages for wrongful death, the defendants appeal from an order of the Supreme Court, Nassau County (Lockman, J.), dated September 1, 1988, which granted the plaintiff's motion to set aside a jury verdict in their favor in the interest of justice (CPLR 4404 [a]), and directed that a new trial be held on the issue of liability.

Ordered that the order is reversed, on the law, with costs, the plaintiff's motion is denied, the verdict is reinstated, and the matter is remitted to the Supreme Court, Nassau County, for the entry of an appropriate judgment in favor of the defendants.

The instant action arose out of an accident which occurred at about 8:15 A.M. on May 12, 1986, on Main Street, near the intersection of North Division Street, in Peekskill, New York. The trial of the instant action commenced on Friday, March 11, 1988.

One of the plaintiff's witnesses, a Mrs. Holmes, testified that the plaintiff's decedent was hit by a van driven by the defendant Bellew while the plaintiff's decedent was walking in the crosswalk at the subject intersection. The witness testified that she did not know whether the plaintiff's decedent looked at the traffic signal overhanging the intersection before stepping into the street. However, two years before the trial, she gave a statement which indicated that the plaintiff's decedent had not done so.

In contrast, the defendant Bellew testified that he was traveling east on Main Street with the light in his favor and was about 50 feet from the intersection when the plaintiff's decedent suddenly walked into the street at a point about 12 feet from the van. Bellew slammed on the brakes, skidded, and hit the plaintiff's decedent. After the impact, the plaintiff's decedent was carried on the hood of the van and eventually was thrown into the crosswalk.

In support of the defendant Bellew's version of the accident, the defense called the investigating police officer, Officer Lynch, to the witness stand on Thursday, March 17, 1988. Lynch supported Bellew's version of the accident on his direct testimony, i.e., he found the plaintiff's decedent lying in the crosswalk after the accident, thus leading to the inference that impact occurred before the defendants' van reached the crosswalk. However, on cross-examination, Lynch testified that Bellew had told him immediately after the accident that he had hit the plaintiff's decedent in the crosswalk. This testimony came as a surprise to the defense counsel since this admission of the defendant Bellew was not in the police report.

At this point, the defense called an expert witness in the field of accident reconstruction, a Mr. Dino Rossini, to the witness stand. The plaintiff's counsel objected to this proposed expert testimony on the ground that the defendants had previously submitted the following response to the plaintiff's demand for discovery on the subject of expert witnesses:

"RESPONSE TO DEMAND PURSUANT TO CPLR 3101 (d)

"1-4. Defendants herein at the present time do not plan to call any expert witness to testify at trial on our behalf. If and when, however, it is in the future deemed necessary, all parties will be duly notified".

In response, the defendants' counsel engaged in the following colloquy with the trial court outside the presence of the jury:

"[Defendants' Counsel]: I finally had an opportunity to see [Mr. Rossini] this morning on a deposition outside, at which time I asked him if I could call him this noon and discuss the possibilities of testimony regarding skid marks and the crosswalk.

"I discussed that information with him and found that he had a finding that in fact, in view of the testimony, would have to be presented today.

"Up until this time Mr. Rossini was not going to be a witness, as I had no feeling that I needed him, until —

"THE COURT: What happened this morning that changed that?

"[Defendants' Counsel]: The whole issue of striking the individual in the crosswalk now became critical, as the police officer testified that that is what my client said, and furthermore, he looked at a photograph with skid marks which suggested that in fact there was a possibility of the vehicle being in the crosswalk.

"THE COURT: Well, you called the officer. Didn't you know he was going to say that?

"[Defendants' Counsel]: We did not.

"As a matter of fact, as I tried to point out with his accident report, there is nothing in any of that information that suggests that this gentleman was struck in the crosswalk.

"THE COURT: This surprised you this morning?

"[Defendants' Counsel]: Your Honor, it certainly did, because other than the confused testimony of Mrs. Holmes who didn't know the stop line from crosswalk as to where the man was, the best we knew was that the body was in the crosswalk, and I'm saying to myself in preparing the case, that if the body was found in the crosswalk, then obviously the contact obviously did not occur there.

"THE COURT: When you talked to me this morning, before there was any testimony, and you told me you were going to have a witness, that was a different witness than this gentleman?

"[Defendants' Counsel]: It was a question of whether we needed a doctor, but then we were discussing this morning that, and, of course, the police officer". * * *

"THE COURT: But what you are telling me is that until the officer testified this morning, that the deceased was in the crosswalk, you thought he wasn't going to place him in the crosswalk?

"[Defendants' Counsel]: That's right.

"THE COURT: The testimony that he gave that your client told him that he hit him in the crosswalk?

"[Defendants' Counsel]: That's correct.

"THE COURT: You didn't know that was going to happen?

"[Defendants' Counsel]: I did not.

"THE COURT: So you brought in an expert to deal with that problem?

"[Defendants' Counsel]: That's right."

Thereafter, out of the presence of the jury, the trial court conducted the following inquiry of the expert witness:

"THE COURT: What are the facts and opinions of which you are going to testify to?

"THE WITNESS: Okay. That the pedestrian was struck by a van. The pedestrian was represented to me to be of average height. The pedestrian fell in the crosswalk as a result of being struck by a vehicle which, according to one version, laid 17 to 20 feet of skid marks and by the plaintiff's, I'm sorry, the defendant/driver's testimony was moving between 30 and 35 miles per hour.

"Those would be the input facts to the hypothetical. The question would be if, under those conditions, if the pedestrian fell in the crosswalk, does that mean he was struck in the crosswalk, or alternatively, does it mean that he was struck at some other position, and if so, what is that position.

"THE COURT: And what was the opinion you were going to state?

"THE WITNESS: My opinion was, it would be, it would have been that the body was struck by the van 21 feet before it hit the ground.

"THE COURT: What is the grounds of that opinion?

"THE WITNESS: Basic law which describes how that a body in motion will continue in motion, or more specifically in this case, that the instant that the van strikes the body, the body must assume the speed of the van. If it assumes the speed of the van, it will take a half a second for it to fall, and at the speed of the van it must carry forward 21 feet.

"It's like a bombing problem. It's like if you drop the bomb it doesn't hit where the plane was. The bomb continues with the aircraft. With the bombing computers the problem is solved where the bomb lands thousands of feet forward.

"The same thing with a pedestrian. You can calculate how far forward he will carry before hitting the pavement.

"THE COURT: All right."

The court then ruled that the expert witness could testify.

Although the plaintiff's counsel objected to the trial court's ruling, he never moved for a continuance to better prepare for cross-examination or to obtain his own expert witness. Indeed, at the conclusion of the defendants' expert's direct testimony, the plaintiff's counsel immediately launched a most vigorous cross-examination of the defendants' expert witness. After the jury came in with a verdict adverse to his client, the plaintiff's counsel moved to set aside the verdict on the ground, *inter alia,* that the introduction of the expert witness's testimony was error.

Thereafter, the trial court, reversing its prior trial ruling, granted the plaintiff's motion to set aside the verdict, stating:

"It is well established that a new trial pursuant to CPLR 4404 (a) may be granted in the interest of justice based upon 'errors in rulings on admissibility of evidence' *(see, Matter of DeLano,* 34 AD2d 1031, 1032, affd 28 NY2d 487). In this case, the Court erred in permitting Mr. Dino Rossini, an 'accident reconstruction expert', to testify for the defendants without advance notice to the plaintiff.

"The Court finds that the expert testimony of Mr. Rossini as the final witness for the defendants affected the verdict. Advance notice would have given the plaintiff time to prepare an effective cross-examination, and to offer rebuttal evidence."

We disagree with the trial court's determination with respect to the plaintiff's motion to set aside the jury verdict.

CPLR 3101 (d) (1) (i) provides in pertinent part:

"3101. Scope of disclosure. * * *

"(d) Trial preparation.

"1. Experts. (i) Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify * * * the qualifications of each expert witness and a summary of the grounds for each expert's opinion. However, where a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof, the party shall not thereupon be precluded from introducing the expert's testimony at the trial solely on the grounds of noncompliance with this paragraph. In that instance, upon motion of any party, made before or at trial, or on its own initiative, the court may make whatever order may be just."

In the case at bar, the record indicates that the expert witness was first retained by the defense during the trial, based on "good cause", i.e., the "surprise" testimony adduced during Officer Lynch's cross-examination. Therefore, pursuant to CPLR 3101 (d) (1) (i), the failure to give "appropriate notice" of this expert's testimony was not, standing alone, a sufficient ground to preclude the defendants from introducing it into evidence. Under these circumstances, the court properly exercised its discretion when it allowed this expert testimony into evidence (see, Siegel, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 1990 Supp Pamph, CPLR C3101:29, at 14).

In any event, even assuming, arguendo, that the defendants' expert should not have been permitted to testify, under all of the circumstances, this error did "not justify the exercise of the discretionary power to set aside the jury's verdict and order a new trial" (Levo v Greenwald, 107 AD2d 991). Mangano, P. J., Brown, Kooper and Harwood, JJ., concur.