WILLIAM GRAZIANO, Respondent, v DAVID S. COOLING et al., Appellants. [913 NYS2d 302]—

In an action to recover damages for medical malpractice and lack of informed consent, the defendants appeal from an order of the Supreme Court, Suffolk County (Baisley, Jr., J.), entered September 23, 2009, which denied their motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, and the defendants' motion for summary judgment dismissing the complaint is granted.

The plaintiff alleges that he began to feel sick on night of September 27, 2004. On September 28, 2004, he went to the emergency room at Stony Brook Hospital, where he was seen by a triage nurse at 4:08 P.M., and a third-year medical student at 5:15 P.M. The defendant David S. Cooling, M.D., examined the plaintiff at 6:15 P.M. Cooling noted that the plaintiff had nasal congestion, nonproductive cough, sore throat, and nausea, had vomited once that morning, and had experienced sinus discomfort for a few days. Upon Cooling's examination, he observed that the plaintiff had rhinorrhea and a slightly infected pharynx, without exudates. Cooling noted that the plaintiff's pupils were equal, round, and reactive to light. The plaintiff was reported to be alert and oriented as to person, place, and time. Cooling further indicated that the plaintiff was in no apparent distress.

At 6:25 P.M., the plaintiff was discharged with a diagnosis of

upper respiratory infection and viral syndrome. Cooling based his diagnosis of upper respiratory infection on the plaintiff's nasal congestion, nonproductive cough, sore throat, nausea, and some sinus discomfort. The plaintiff was instructed, inter alia, to return or contact his family doctor if his condition worsened or if it did not resolve itself in one week.

The morning after the plaintiff was seen by Cooling, the plaintiff's family brought him to their family doctor, in part, because the plaintiff was "not making any sense" when he spoke.

The plaintiff was referred by his family doctor to the emergency room of another hospital. The plaintiff was admitted into the emergency room at that hospital at 11:20 A.M. on September 29, 2004. The triage notes indicate that the plaintiff was oriented only as to his own identity, but not as to place and time, and that he was "waxing and waning." The plaintiff was observed to be very weak and ill and had a fever of up to 102° F. The plaintiff was given a blood test between 11:20 A.M. and 11:25 A.M. At 11:30 A.M. the plaintiff was given an antibiotic which treats bacterial meningitis. He underwent a lumbar puncture at 12:50 P.M., which was completed at 1:00 P.M., and showed an elevated glucose level and white blood cell count. The plaintiff's chart notes that he was first diagnosed with meningococcal meningitis, a type of bacterial meningitis, between 2:00 P.M. and 2:15 P.M. on September 29, 2004.

The plaintiff commenced this action to recover damages for medical malpractice and lack of informed consent against Cooling and Stony Brook Emergency Physicians, University Faculty Practice Corporation (hereinafter together the defendants). The defendants moved for summary judgment dismissing the complaint. The Supreme Court denied the motion, and we reverse.

The defendants established their prima facie entitlement to judgment as a matter of law through the submission of Cooling's own affidavit and their expert's affidavit, opining that Cooling did not deviate from good and accepted standards of medical care during the treatment he rendered to the plaintiff and that, in any event, Cooling's treatment of the plaintiff was not the proximate cause of any injuries the plaintiff may have sustained (see Swezey v Montague Rehab & Pain Mgt., P.C., 59 AD3d 431, 433 [2009]; Breland v Jamaica Hosp. Med. Ctr., 49 AD3d 789, 790 [2008]).

Contrary to the conclusion of the Supreme Court, the affidavit of the plaintiff's expert, submitted in opposition to the defendants' motion, failed to raise a triable issue of fact. The

plaintiff's expert's affidavit was conclusory, speculative, and failed to address the specific assertions of the defendants' expert, including the assertion regarding proximate cause (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325 [1986]; *Thompson v Orner*, 36 AD3d 791 [2007]; *Barila v Comprehensive Pain Care of Long Is.*, 44 AD3d 806, 807 [2007]; *Rebozo v Wilen*, 41 AD3d 457, 459 [2007]; *DiMitri v Monsouri*, 302 AD2d 420, 421 [2003]; *Domaradzki v Glen Cove Ob/Gyn Assoc.*, 242 AD2d 282 [1997]). For example, the plaintiff's expert did not assert that the plaintiff exhibited key symptoms such as photophobia and neck stiffness, or other "cardinal signs," which would have led to a diagnosis of meningococcal meningitis prior to the afternoon of September 29, 2004. The plaintiff's expert also did not assert that any further testing was indicated at the time that Cooling examined the plaintiff. Therefore, there was no support for the expert's conclusory and speculative statement that the plaintiff would have been diagnosed and begun treatment sooner if not for Cooling's alleged deviations from the recognized standard of care (*see Dixon v Freuman*, 175 AD2d 910, 911 [1991]).

Since the plaintiff failed to raise a triable issue of fact with respect to the issue of proximate cause, the defendants were also entitled to summary judgment on the cause of action sounding in lack of informed consent (*see Viola v Blanco*, 1 AD3d 506 [2003]; *Mondo v Ellstein*, 302 AD2d 437 [2003]). Rivera, J.P., Florio, Belen and Austin, JJ., concur. **[Prior Case History: 2009 NY Slip Op 32183(U).]**