■ WILLIAM FORREST, Appellant, et al., Plaintiff, v SEAN TIERNEY, D.O., et al., Defendants, and MERCY MEDICAL CENTER et al., Respondents. [936 NYS2d 295]—

On December 31, 2004, at approximately 4:01 P.M., the plaintiff William Forrest (hereinafter Forrest) presented to the emergency room at the defendant Mercy Medical Center (hereinafter Mercy), arriving by ambulance. Forrest complained of right flank pain radiating to the right shoulder for the past two weeks. He was examined by a triage nurse.

He was next examined by a physician's assistant, the defendant Christopher Edelstein, at 7:00 P.M. Edelstein ordered a laboratory work-up, an electrocardio-gram (hereinafter EKG), a chest X ray, and a CT scan of Forrest's abdomen and pelvis. The EKG results were normal. The X ray showed "infiltrate, perhaps with fluid at the right base" of the right lung. The CT scan of the pelvis and abdomen showed a kidney stone measuring 3 to 4 millimeters in diameter and "evidence of a right base atelectasis versus infiltrate and a small pericardial effusion." Edelstein documented these findings on Forrest's chart and made a preliminary diagnosis of lobar pneumonia.

Edelstein then presented the case to the defendant Daniel Murphy, a physician. Murphy also performed a physical examination of Forrest. Murphy noted that the chest X ray was positive for pneumonia, consistent with the symptoms observed. Murphy noted that he had received the CT scan results indicating an incidental, or small, pericardial effusion. Murphy diagnosed Forrest with pneumonia based on Forrest's history, physical examination, and chest X ray. In addition, Forrest was diagnosed with a kidney stone and a pericardial effusion.

Murphy instructed Edelstein to prescribe Forrest an antibiotic that is effective for pneumonia, and a pain medication. Murphy did not admit Forrest to the hospital because he did not present with any of the symptoms of toxicity which would have indicated the need for hospital admittance, such as low oxygen, dehydration, or unstable pulse or blood pressure. Forrest did not have a fever, appeared healthy, had a normal white blood cell count, and had a normal EKG, and the chest X ray showed infiltrate, but nothing "gigantic."

Forrest was discharged at 8:11 P.M. with a diagnosis of lobar pneumonia and renal calculus, or kidney stone. Forrest was given his prescriptions and told to see a recommended pulmonary and critical care specialist at Mercy in three days and to return to the emergency room if his condition worsened. Forrest signed a statement stating that he received discharge instructions and would arrange follow-up care as instructed.

Forrest did not see the recommended doctor or seek treatment from any other doctor for five days. On January 5, 2005, Forrest returned to the emergency room at Mercy, was admitted

with a diagnosis of right lobe pneumonia with empyema, and subsequently underwent two surgical procedures.

Forrest, and his wife, suing derivatively, commenced this action, inter alia, to recover damages for medical malpractice against, among others, Mercy, Murphy, Edelstein, and Long Island Emergency Care, P.C. Mercy, and Murphy, Edelstein, and Long Island Emergency Care, P.C. (hereinafter collectively the defendants), separately moved for summary judgment dismissing the complaint insofar as asserted against each of them The Supreme Court granted the separate motions. Forrest appeals, and we affirm.

The defendants established their prima facie entitlement to judgment as a matter of law through, inter alia, the submission of Forrest's deposition testimony, Murphy's deposition testimony, Forrest's medical records, and the defendants' expert affirmation. The defendants' expert opined that the defendants did not deviate from good and accepted standards of medical care during the treatment rendered to Forrest and that, in any event, their treatment of Forrest was not a proximate cause of any injuries Forrest may have sustained (*see Graziano v Cooling*, 79 AD3d 803, 805 [2010]; *Swezey v Montague Rehab & Pain Mgt., P.C.*, 59 AD3d 431, 433 [2009]; *Breland v Jamaica Hosp. Med. Ctr.*, 49 AD3d 789, 790 [2008]).

Contrary to Forrest's contention, the affirmation of the plaintiffs' expert, submitted in opposition to the motions, failed to raise a triable issue of fact. The plaintiffs' expert's affirmation was conclusory and speculative, and failed to address the specific assertions of the defendants' expert, including the assertion regarding proximate cause (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325 [1986]; *Stukas v Streiter*, 83 AD3d 18, 25-26 [2011]; *Graziano v Cooling*, 79 AD3d at 805; *Thompson v Orner*, 36 AD3d 791 [2007]; *Barila v Comprehensive Pain Care of Long Is.*, 44 AD3d 806, 807 [2007]; *Rebozo v Wilen*, 41 AD3d 457, 459 [2007]; *DiMitri v Monsouri*, 302 AD2d 420, 421 [2003]; *Domaradzki v Glen Cove Ob/Gyn Assoc.*, 242 AD2d 282 [1997]). For example, the plaintiffs' expert did not contradict the defendants' expert's opinion that Forrest did not exhibit symptoms requiring hospitalization on December 31, 2004. Furthermore, Forrest himself testified at his deposition that he did not follow the aftercare instructions provided to him by the defendants to follow up with the pulmonary and critical care specialist at Mercy within three days. Therefore, there was no support for the expert's conclusory and speculative statement that Forrest's claimed injuries were caused or worsened by the defendants' alleged deviations from the recognized standard of care (*see*

*Graziano v Cooling*, 79 AD3d at 805; *Dixon v Freuman*, 175 AD2d 910, 911 [1991]). Accordingly, the Supreme Court properly granted the defendants' motions for summary judgment dismissing the complaint insofar as asserted against them. Dillon, J.P., Florio, Chambers and Miller, JJ., concur.