OPINION OF THE COURT
Belen, J.
This case presents us with an opportunity to clarify the rule regarding a court’s consideration of an expert’s affirmation or affidavit submitted on a timely motion for summary judgment where the offering party did not disclose the expert dur *31 ing discovery pursuant to CPLR 3101 (d) (1) (i) before the filing of a note of issue and certificate of readiness. We hold that a party’s failure to disclose its experts pursuant to CPLR 3101 (d) (1) (i) prior to the filing of a note of issue and certificate of readiness does not divest a court of the discretion to consider an affirmation or affidavit submitted by that party’s experts in the context of a timely motion for summary judgment.
The plaintiffs allege that the defendants committed medical malpractice in failing to properly diagnose and advise the allegedly injured plaintiff, Joanne Berrouet Rivers (hereinafter the injured plaintiff), of conditions that led to the development in her of a gynecological cancer known as choriocarcinoma. On March 1, 2006, the injured plaintiff was seen by the defendant Kim Rosary DeCastro, a nurse practioner and an employee of the defendant Women’s Health Care of Suffolk County (hereinafter WHC),[1] during a health care visit. DeCastro conducted a pelvic exam, which proved to be within normal limits, and assessed that the injured plaintiff was 5V2 weeks pregnant. The injured plaintiff was next seen by DeCastro on March 15, 2006. At this visit, the injured plaintiff complained of pain radiating to her back and shortness of breath, and was prescribed amoxicillin to treat chlamydia.
On March 22, 2006, after the injured plaintiff complained of cramping and a “pink, yogurty discharge,” she underwent a sonogram, which showed that there were very faint fetal heart tones and that the fetus was at seven weeks’ gestation. A sonogram from March 29, 2006, showed that the fetus had died.
On April 3, 2006, the injured plaintiff went to the defendant St. Catherine of Siena Medical Center (hereinafter the Medical Center) for a dilation and curettage, which was performed by the defendant Eliot L. Birnbaum. The tissue that was recovered during the procedure was examined by the defendant Alan MacDonald, a pathologist.
According to a surgical pathology report written by MacDonald dated April 5, 2006, the tissue contained no fetal parts. MacDonald made the following diagnosis:
“Uterus, Uterine Contents:
“* Immature chorionic villi, with focal zones of surface trophoblast hyperplasia noted.
*32 “* Necrotic decidual tissue.
“* Probable portions of placental implantation site.” MacDonald indicated in his report that he spoke with Birnbaum on April 4, 2006, about his findings.
At her deposition, DeCastro testified that the recognition and diagnosis of trophoblasic disease is outside her training, knowledge, and experience as a nurse practitioner. She further testified that she generally does not review pathology reports, as such a task is usually performed by Birnbaum or Bliss, or by whichever surgeon performed the dilation and curettage.
By August 2006, the injured plaintiff had become pregnant again. Sonograms during this pregnancy showed that the fetus was growing and developing normally. In February 2007, the injured plaintiff complained of back pain, and a renal ultrasound was ordered. The injured plaintiff underwent renal ultrasounds on February 2, 2007, and March 21, 2007, which were interpreted by nonparty Moses Williams, a radiologist at the Medical Center who prepared reports pertaining to his findings. Williams described in his reports the presence of an echogenic lesion in the mid-section of the right kidney, which he identified as “hyperechoic” and consistent with an angiomyolipoma, which is a benign tumor. On April 2, 2007, the injured plaintiff gave birth to a healthy baby boy by caesarean section. Soon thereafter, in June 2007, she was diagnosed with metastatic choriocarcinoma.
The injured plaintiff and her husband commenced this action in June 2008, asserting, on behalf of the injured plaintiff, causes of action to recover damages for medical malpractice, negligent hiring and supervision, and lack of informed consent, and a derivative cause of action on behalf of the injured plaintiff’s husband. By demand dated August 26, 2008, the plaintiffs requested, pursuant to CPLR 3101 (d) (1) (i), that the defendants disclose information regarding their expected expert trial witnesses. On or about January 26, 2010, the plaintiffs disclosed their expert trial witness information to the defendants. Before any of the defendants responded to the plaintiffs’ CPLR 3101 (d) (1) (i) request, on or about February 3, 2010, the plaintiffs filed a note of issue and certificate of readiness.[2]
*33 Thereafter, the defendants Bliss, MacDonald, the Medical Center, and DeCastro[3] (hereinafter collectively the moving defendants) separately moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them, relying on, inter alia, affirmations from physicians-experts whose identities they had not disclosed during discovery. Bliss argued that she was entitled to judgment on the ground that she never provided any medical care to the plaintiff.[4]
The plaintiffs opposed the motions and cross-moved for summary judgment on the issue of liability against MacDonald. In opposing the motions of MacDonald, the Medical Center, and DeCastro, the plaintiffs argued, in pertinent part, that the expert affirmations submitted by those defendants should be precluded because they failed to respond to their request, made during discovery, for expert disclosure pursuant to CPLR 3101 (d) (1) (i) before the note of issue and certificate of readiness were filed.
In rejecting the plaintiffs’ argument, the Supreme Court held that the failure of MacDonald, the Medical Center, and DeCastro to respond to the plaintiffs’ CPLR 3101 (d) (1) (i) request did not warrant preclusion of their expert affirmations since the statute does not require expert disclosure at any particular time and does not mandate preclusion for noncompliance. The Supreme Court also found no evidence that the failure of these *34 defendants to disclose their expert information was intentional or willful, and there was no showing that their nondisclosure prejudiced the plaintiffs.
Turning to the merits of the moving defendants’ motions, the Supreme Court determined that MacDonald, the Medical Center, and DeCastro each established their prima facie entitlement to judgment as a matter of law through the affirmations of their respective experts. The Supreme Court further determined that the affirmations[5] of the plaintiffs’ experts submitted in opposition to the motions of MacDonald and the Medical Center were technically defective because the experts were not licensed to practice medicine in New York. However, the Supreme Court determined that the affirmation of the plaintiffs’ expert submitted in opposition to DeCastro’s motion raised a triable issue of fact as to whether DeCastro departed from accepted standards of medical care. Accordingly, the Supreme Court granted the motions of MacDonald and the Medical Center for summary judgment, and denied DeCastro’s motion for summary judgment. The Supreme Court granted Bliss’s motion for summary judgment, concluding that the plaintiffs did not raise a triable issue of fact in opposition to Bliss’s prima facie case, since they submitted only the affirmation of their attorney (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
With respect to the plaintiffs’ cross motion, in effect, for summary judgment on the issue of liability against MacDonald, the Supreme Court determined that the plaintiffs failed to establish their prima facie entitlement to judgment as a matter of law because their out-of-state expert’s affirmation was technically defective.
The plaintiffs appeal from so much of the Supreme Court’s order as granted those branches of the separate motions of MacDonald, the Medical Center, and Bliss which were for summary judgment dismissing the complaint insofar as asserted against each of them, and denied their cross motion, in effect, for summary judgment on the issue of liability against MacDonald. Among other things, the plaintiffs argue that the Supreme Court should not have considered the affirmations submitted by these defendants, since they failed to disclose their experts pursuant to CPLR 3101 (d) (1) (i) prior to the filing of the note of issue and certificate of readiness. DeCastro separately appeals *35 from so much of the same order as denied that branch of her motion which was for summary judgment dismissing the complaint insofar as asserted against her, arguing that the plaintiffs failed to raise a triable issue of fact in opposition to her prima facie showing of entitlement to judgment as a matter of law. We affirm the order insofar as appealed from by the plaintiffs, and reverse the order insofar as appealed from by DeCastro.
CPLR 3101 (d) (1) (i) provides as follows:
“Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion. However, where a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof, the party shall not thereupon be precluded from introducing the expert’s testimony at the trial solely on grounds of noncompliance with this paragraph. In that instance, upon motion of any party, made before or at trial, or on its own initiative, the court may make whatever order may be just. In an action for medical, dental or podiatric malpractice, a party, in responding to a request, may omit the names of medical, dental or podiatric experts but shall be required to disclose all other information concerning such experts otherwise required by this paragraph” (emphasis added).
Although the statute mandates that, “[u]pon request,” a party “shall” identify the experts it “expects to call as an expert witness at trial” (CPLR 3101 [d] [1] [i]), it does not specify when a party must disclose its expected trial experts upon receiving a demand (compare Fed Rules Civ Pro rule 26 [a] [2] [D] [requiring parties to disclose their experts “at the times and in the sequence that the court orders”]). As such, a CPLR 3101 (d) (1) (i) demand made during discovery “does not require a party to respond to a demand for expert witness information ‘at any specific time nor does it mandate that a party be precluded from proffering expert testimony merely because of noncompli *36 anee with the statute’ ” (Aversa v Taubes, 194 AD2d 580, 582 [1993], quoting Lillis v D’Souza, 174 AD2d 976, 976 [1991]; see David D. Siegel, NY Prac § 348A at 583 [5th ed] [noting that CPLR 3101 (d) (1) (i) “sets forth no particular time for the making of the request, and no particular time for responding to it”]).
When interpreting a law, a court must always look to legislative intent, which “is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94). Further, where the legislature “ ‘includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion’ ” (INS v Cardoza-Fonseca, 480 US 421, 432 [1987], quoting Russello v United States, 464 US 16, 23 [1983] [internal quotation marks omitted]).
Of note, the next subdivision of the statute, CPLR 3101 (d) (1) (ii), contains a specific provision requiring, in medical, dental, or podiatric malpractice actions, a party, “[w]ithin twenty days of service,” to accept or reject an opponent’s written “offer to disclose the name of, and to make available for examination upon oral deposition, any person the party making the offer expects to call as an expert witness at trial” (emphasis added). Given the inclusion of a specific deadline in CPLR 3101 (d) (1) (ii) and the omission of such a deadline in CPLR 3101 (d) (1) (i), we presume that the legislature purposefully omitted a deadline in CPLR 3101 (d) (1) (i) (see INS v Cardoza-Fonseca, 480 US at 432).
We recognize that CPLR 3101 (d) (1) (i) is part of CPLR article 31, which governs the discovery process. We further recognize that, generally, when a party files a note of issue and certificate of readiness, it must affirm that “[discovery proceedings now known to be necessary [have been] completed” (22 NYCRR 202.21 [b]). However, as previously discussed, the legislature omitted a specific deadline by which a party must respond to a CPLR 3101 (d) (1) (i) request, and the statute itself specifically vests a trial court with the discretion to allow the testimony of an expert who was disclosed near the commencement of trial. Thus, the statutory scheme provides that, even where one party requests trial expert disclosure during discovery pursuant to *37 CPLR 3101 (d) (1) (i), a recipient party who does not respond to the request until after the filing of the note of issue and certificate of readiness will not automatically be subject to preclusion of its expert’s trial testimony. Accordingly, the failure of a party to exchange expert information pursuant to CPLR 3101 (d) (1) (i) before the filing of a note of issue and certificate of readiness will not divest a trial court of the discretion to consider an affirmation or affidavit submitted by that party’s experts in the context of a timely motion for summary judgment.
Turning to the legislative history, as originally enacted in 1962, CPLR 3101 exempted expert witnesses from disclosure (see CPLR former 3101, as added by L 1962, ch 308; Governor’s Program Bill Mem, Bill Jacket, L 1985, ch 294 at 6). Through the 1985 amendment to CPLR 3101, of which subdivision (d) (1) (i) is a part, the legislature intended to “expand disclosure” (David D. Siegel, 1985 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:29, 1990 Supp Pamphlet at 13), by requiring, for the first time, that parties disclose their experts, but deliberately did so only in the limited context of requiring a party, upon request, to make a pretrial disclosure of expected expert witnesses at trial.
CPLR 3101 (d) (1) (i) was originally conceived as part of a major overhaul of medical malpractice litigation procedures. The new requirement in this overhaul that parties disclose their expert trial witnesses was intended to reduce the delay between the “medical malpractice event and the ultimate disposition,” which was a major contributor to increased medical malpractice insurance premiums (Governor’s Program Bill Mem, Bill Jacket, L 1985, ch 294 at 9). Therefore, the amendment was conceived as part of a multi-pronged effort “to expedite litigation, to encourage prompt settlements and to deter parties from asserting frivolous claims and defenses” (id.).
Thereafter, the provision was “plucked from” of its place in the original medical malpractice litigation reform bill and made applicable to all forms of litigation (see David D. Siegel, 1985 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:29, 1990 Supp Pamphlet at 13; Rep No. 95 of NY County Lawyers’ Assn. Comm on State Legislation, Bill Jacket, L 1985, ch 294 at 16). Modeled on rule 26 of the Federal Rules of Civil Procedure, the proposed amendment marked a departure from the prohibition on expert disclosure in civil litigation by generally allowing parties “to conduct basic disclosure regarding experts without court order” (1985 Rep of *38 Advisory Comm on Civ Prac at 49, reprinted in 1985 McKinney’s Session Laws of NY at 3380). However, this expansion was relatively limited, as it only required, upon request, pretrial disclosure of the identity and qualifications of each person expected to be called at trial as an expert witness and the substance of their expected testimony, but did not require a party to disclose the experts it had retained but had not determined would be called at trial (see id.; Governor’s Program Bill Mem, Bill Jacket, L 1985, ch 294 at 4 [noting that “(s)ection four (of the bill) would require the disclosure of the qualifications of experts and the substance of their testimony prior to trial in civil actions”]).
Moreover, although the legislature recognized that “the testimony of expert witnesses is often the single most important element of proof in malpractice and other personal injury actions” (Governor’s Program Bill Mem, Bill Jacket, L 1985, ch 294 at 9), the legislature limited disclosure inasmuch as it did not provide for examinations before trial of expert witnesses (see Rep No. 95 of NY County Lawyers’ Assn. Comm on State Legislation, Bill Jacket, L 1985, ch 294 at 16; compare id., with Fed Rules Civ Pro rule 26 [b] [4] [A] [“A party may depose any person who has been identified as an expert whose opinions may be presented at trial”]).[6]
In its current form, CPLR 3101 (d) (1) (i) requires a party, upon request, to disclose information regarding each person it expects to call as an expert witness prior to trial, without specifying that such disclosure must be made prior to the filing of the note of issue and certificate of readiness. Further, the language of CPLR 3101 (d) (1) (i) anticipates that the disclosure of expert trial witnesses might not occur until near the commencement of trial. As such, the statute implicitly recognizes *39 that parties often delay the retaining of an expert until it is apparent that settlement is unlikely and a trial will be necessary. Significantly, even if a party has retained an expert during discovery and is the recipient of a CPLR 3101 (d) (1) (i) request for trial expert disclosure, it has no affirmative obligation to disclose that expert during discovery unless it “expects to call [that expert] as an expert witness at trial” (CPLR 3101 [d] [1] [i]; see Vigilant Ins. Co. v Barnes, 199 AD2d 257 [1993]).
Based on the plain language and intent of the statute, which do not automatically preclude experts disclosed near the commencement of trial from testifying at trial, there is no basis for concluding that a court must reject a party’s submission of an expert’s affidavit or affirmation in support of, or in opposition to, a timely motion for summary judgment solely because the expert was not disclosed pursuant to CPLR 3101 (d) (1) (i) prior to the filing of a note of issue and certificate of readiness, or prior to the making of the motion.[7] We further note that a court has the discretion, under its general authority to supervise disclosure, to impose a specific deadline for expert disclosure under CPLR 3101 (d) (1) (i), for example, prior to the filing of a note of issue and certificate of readiness or prior to a motion for summary judgment (see Mauro v Rosedale Enters., 60 AD3d 401 [2009]). Moreover, where a trial court sets a specific deadline for expert disclosure, it has the discretion, pursuant to CPLR 3126, to impose appropriate sanctions if a party fails to comply with the deadline (see MacDonald v Leif, 89 AD3d 995 [2011]; Pirro Group, LLC v One Point St., Inc., 71 AD3d 654 [2010]; Bomzer v Parke-Davis, Div. of Warner Lambert Co., 41 AD3d 522 [2007]; Maiorino v City of New York, 39 AD3d 601 [2007]).
We recognize that certain decisions of this Court may have been interpreted as standing for the proposition that a party’s failure to disclose its experts pursuant to CPLR 3101 (d) (1) (i) prior to the filing of a note of issue and certificate of readiness, by itself, requires preclusion of an expert’s affirmation or affidavit submitted in support of a motion for summary judgment. For example, in Construction by Singletree, Inc. v Lowe (55 AD3d 861 [2008]), a subcontractor hired in a home construction project commenced an action against the general contractor, J.C. Construction Management Corp. (hereinafter J.C.), and J.C.’s *40 client, Sheldon Lowe, trustee under the Sheldon Lowe declaration of trust dated January 15, 1999 (hereinafter Lowe), to recover money it allegedly was owed in connection with the project. Lowe cross-claimed against J.C. seeking, inter alia, to recover damages for breach of warranty based on J.C.’s allegedly improper installation of the flooring and insulation systems in the home, and seeking payment pursuant to a liquidated damages clause that had been added to the contract between himself and J.C.
After the completion of discovery, J.C. moved for summary judgment dismissing, inter alia, the aforementioned cross claims. In opposition, Lowe submitted, among other things, affidavits from purported experts in the flooring and air conditioning industries, opining that the flooring and insulation systems in the home were faulty, and estimating the costs to repair each system. A majority of the panel of Justices affirmed the determination of the Supreme Court to grant J.C.’s motion for summary judgment, concluding that J.C. established its prima facie entitlement to judgment as a matter of law, and that Lowe failed to raise a triable issue of fact in opposition. As to Lowe’s opposition, the majority stated that
“[t]he Supreme Court did not improvidently exercise its discretion in declining to consider the affidavits of the purported experts proffered by Lowe, since Lowe failed to identify the experts in pretrial disclosure and served the affidavits after the note of issue and certificate of readiness attesting to the completion of discovery were filed in this matter” (id. at 863 [emphasis added]).
The majority further explained:
“As it is undisputed that Lowe failed to identify any experts in pretrial disclosure whom he intended to call to testify at trial concerning whether the work was faulty or the extent of his alleged compensatory damages arising from that breach of warranty, and did not proffer any explanation for such failure, it was not an improvident exercise of discretion for the Supreme Court to have determined that the specific expert opinions set forth in the affidavits submitted in opposition to the motion for summary judgment could not be considered at trial” (id.).
Additionally, in addressing the dissent by Justice Garni, which concluded that CPLR “3101 (d) (1) (i) applies only to an expert *41 whom a party intends to call at trial,” and not an expert used in a motion for summary judgment, the majority indicated that the affidavits of Lowe’s experts were inadmissible at trial (id.). The majority arguably found the affidavits of Lowe’s experts inadmissible in part because of Lowe’s failure to disclose its experts prior to the filing of the note of issue and certificate of readiness. Such a conclusion suggests, first, that Lowe’s failure to disclose the experts prior to the filing of the note of issue and certificate of readiness rendered the disclosure untimely pursuant to CPLR 3101 (d) (1) (i), and, second, that such untimely disclosure rendered the experts’ affidavits inadmissible. Indeed, some of our decisions may be interpreted as so holding and as setting forth a bright-line rule in which expert disclosure pursuant to CPLR 3101 (d) (1) (i) is untimely if it is made after the filing of the note of issue and certificate and readiness and, thus, in the absence of a valid excuse for such a delay, a court must preclude an affidavit or affirmation from an expert whose identity is disclosed for the first time as part of a motion for summary judgment (see e.g., Stolarski v DeSimone, 83 AD3d 1042, 1044-1045 [2011]; Ehrenberg v Starbucks Coffee Co., 82 AD3d 829 [2011]; Pellechia v Partner Aviation Enters., Inc., 80 AD3d 740 [2011]; Vailes v Nassau County Police Activity League, Inc., Roosevelt Unit, 72 AD3d 804 [2010]; Gerardi v Verizon N.Y., Inc., 66 AD3d 960 [2009]; Wartski v C.W. Post Campus of Long Is. Univ., 63 AD3d 916, 917 [2009]; King v Gregruss Mgt. Corp., 57 AD3d 851, 852-853 [2008]; Colon v Chelsea Piers Mgt., Inc., 50 AD3d 616 [2008]; see also DeLeon v State of New York, 22 AD3d 786, 787 [2005]; Herrera v Lever, 34 Misc 3d 1239[A], 2012 NY Slip Op 50477[U], *2-4 [2012]).
We now clarify that the fact that the disclosure of an expert pursuant to CPLR 3101 (d) (1) (i) takes place after the filing of the note of issue and certificate of readiness does not, by itself, render the disclosure untimely. Rather, the fact that pretrial disclosure of an expert pursuant to CPLR 3101 (d) (1) (i) has been made after the filing of the note of issue and certificate of readiness is but one factor in determining whether disclosure is untimely. If a court finds that the disclosure is untimely after considering all of the relevant circumstances in a particular case, it still may, in its discretion, consider an affidavit or affirmation from that expert submitted in the context of a motion for summary judgment, or it may impose an appropriate sanction.
We further reiterate that a trial court, under its general authority to supervise disclosure deadlines, and consistent with *42 its discretion to supervise the substance of discovery, may impose a specific deadline (for example, prior to the filing of the note of issue and certificate of readiness or prior to the making of a motion for summary judgment) for the disclosure of experts to be used in support of a motion for summary judgment, or who are expected to testify at trial, or both. Moreover, where a trial court has set a specific deadline for expert disclosure, it has the discretion, pursuant to CPLR 3126, to impose appropriate sanctions if a party fails to comply with the deadline (see MacDonald v Leif, 89 AD3d 995 [2011]; Pirro Group, LLC v One Point St., Inc., 71 AD3d 654 [2010]; Bomzer v Parke-Davis, Div. of Warner Lambert Co., 41 AD3d 522 [2007]; Maiorino v City of New York, 39 ADSd 601 [2007]).
As clarified, this rule is consistent both with the statute and with the general purpose of summary judgment itself. Summary judgment is the procedural equivalent of a trial and “must be denied if any doubt exists as to a triable issue or where a material issue of fact is arguable” (Dykeman v Heht, 52 AD3d 767, 769 [2008]). In considering a motion for summary judgment, the function of the court is not to determine issues of fact or credibility, but merely to determine whether such issues exist (see Gitlin v Chirinkin, 98 AD3d 561 [2012]; Dykeman v Heht, 52 AD3d at 769; Tunison v D.J. Stapleton, Inc., 43 AD3d 910 [2007]).
The preclusion of an expert’s affirmation or affidavit submitted in the context of a motion for summary judgment based solely on a party’s failure to disclose the expert pursuant to CPLR 3101 (d) (1) (i) prior to the filing of a note of issue and certificate of readiness does not necessarily advance the court’s role of determining the existence of a triable issue of fact. In the context of a motion for summary judgment in a medical malpractice action, generally, a party must submit an affidavit or affirmation from an expert medical provider to meet its prima facie burden, or to raise a triable issue of fact in opposition (see Post v County of Suffolk, 80 AD3d 682, 685 [2011]; Dunn v Khan, 62 AD3d 828, 829 [2009]). Precluding an expert’s affidavit solely on the ground that the offering party did not disclose the expert’s identity pursuant to CPLR 3101 (d) (1) (i) prior to the filing of the note of issue and certificate of readiness is not consistent with the purpose and procedural posture of a motion for summary judgment.
In the matter at bar, the Supreme Court providently exercised its discretion in considering the experts’ affirmations submitted by the moving defendants, and the additional affidavits submit *43 ted by Bliss, in support of their respective motions for summary judgment, despite the fact that they did not disclose those experts pursuant to CPLR 3101 (d) (1) (i) prior to the filing of the note of issue and certificate of readiness.[8]
Turning to the merits of the moving defendants’ respective motions, in a medical malpractice action, the requisite elements of proof are a deviation or departure from accepted community standards of medical care and evidence that such departure was a proximate cause of injury or damage (see Orsi v Haralabatos, 89 AD3d 997, 998 [2011], lv granted 18 NY3d 809 [2012]; Geffner v North Shore Univ. Hosp., 57 AD3d 839, 842 [2008]; Elliot v Long Is. Home, Ltd., 12 AD3d 481, 482 [2004]). A defendant seeking summary judgment in a medical malpractice action bears the burden of establishing, prima facie, either that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the plaintiffs injuries (see Swanson v Raju, 95 AD3d 1105, 1106 [2012]). In opposition, the plaintiff must demonstrate the existence of a triable issue of fact only as to the elements on which the defendant has met his or her initial burden (see Stukas v Streiter, 83 AD3d 18, 23-24 [2011]).
Here, in support of their separate motions for summary judgment, MacDonald and the Medical Center demonstrated their prima facie entitlement to judgment as a matter of law by submitting, inter alia, affirmations from experts that established that these defendants did not depart from good and accepted standards of medical care and that, in any event, any departures were not a proximate cause of the injured plaintiffs injuries. MacDonald’s expert, Leonard B. Kahn, a board-certified pathologist, opined that the pathology slides from the injured plaintiffs dilation and curettage confirm that the tissue specimen is a missed abortion with no evidence of a hydatidiform mole. Kahn observed that the slides showed the presence of immature chorionic villi, the majority of which were “well vascularized and normal in caliber,” while other villi “showed hydropic changes without trophoblastic overgrowth,” and that “[f]ocally, there is hyperplasia or overgrowth of syntrophoblastic and cy *44 totrophoblastic tissue noted to be polar in relation to the involved villi.” Accordingly, Kahn opined that MacDonald’s diagnosis, set forth in the pathology report, of “[i]mmature chorionic villi, with focal zones of surface trophoblast hyperplasia[,] [n]ecrotic decidual tissue[,] [and] [p]robable portions of placental implantation site” was adequate, correct, and conformed with good and accepted medical practice. He further opined that MacDonald’s diagnosis was not the proximate cause of the plaintiffs injuries.
In opposition to MacDonald’s motion, the plaintiffs submitted, inter alia, an affidavit from pathologist Theonia Boyd, a board-certified pathologist licensed to practice in Massachusetts, which was notarized in Massachusetts but not accompanied by a certification in accordance with CPLR 2309 (c). However, this defect was not fatal, as MacDonald was not prejudiced thereby (see CPLR 2001; US Bank N.A. v Dellarmo, 94 AD3d 746, 748 [2012]; Betz v Daniel Conti, Inc., 69 AD3d 545 [2010]). Accordingly, the Supreme Court improvidently exercised its discretion in not considering Boyd’s affidavit.
As to the substance of Boyd’s affidavit, she opined that MacDonald departed from good and accepted medical practice by misinterpreting the injured plaintiff’s pathology slides in light of the “unequivocal features of a hydatidiform molar pregnancy” allegedly revealed therein. Notably, however, Boyd failed to describe or quantify in any way the “unequivocal features of a hydatidiform molar pregnancy” that she alleged MacDonald failed to observe. Boyd’s opinion is, therefore, conclusory and fails to raise a triable issue of fact as to whether MacDonald departed from good and accepted medical practice (see Ahmed v New York City Health & Hosps. Corp., 84 AD3d 709, 711 [2011]; Dunn v Khan, 62 AD3d 828, 829 [2009]). In any event, Boyd’s assertion that the correct diagnosis would have led to an appropriate follow-up plan is conclusory and speculative, and thus, fails to raise a triable issue of fact as to causation (see Forrest v Tierney, 91 AD3d 707, 709 [2012]; Graziano v Cooling, 79 AD3d 803, 805 [2010]). Accordingly, the Supreme Court properly granted that branch of MacDonald’s motion which was for summary judgment dismissing the complaint insofar as asserted against him.
In support of its motion for summary judgment, the Medical Center demonstrated its prima facie entitlement to judgment as a matter of law by submitting, inter alia, an affirmation from David A. Fisher, a board-certified diagnostic *45 radiologist. In his affirmation, Fisher opined that the diagnosis by the Medical Center’s radiologist, Moses Williams, based on the injured plaintiffs February 2, 2007, obstetrical and renal ultrasound studies, correctly interpreted a small echogenic lesion on the injured plaintiffs mid-right kidney as angiomyolipoma, and properly recommended follow-up evaluation of the lesion. Further, Williams’s identical diagnosis, based on the injured plaintiff’s March 21, 2007, renal ultrasound, was similarly correct. Fisher also opined, with a reasonable degree of medical certainty, that his own review of the renal ultrasound studies showed no evidence of metastatic choriocarcinoma. Based on the foregoing assertions, Fisher concluded that the Medical Center did not depart from good and accepted medical practice, and that, in any event, no action or inaction on the Medical Center’s part was a proximate cause of the injured plaintiffs injuries.
The record reflects that, in opposition to the Medical Center’s motion, the plaintiffs submitted a redacted affirmation from an unnamed board-certified radiologist who is licensed to practice in Connecticut. Like Boyd’s affirmation, this redacted affirmation, which indicates that it was drafted in Connecticut, was not accompanied by a certification in accordance with CPLR 2309 (c). However, unlike Boyd’s affirmation, the radiologist’s affirmation was not signed, not dated, and not notarized, and therefore was inadmissible (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Fredette v Town of Southampton, 95 AD3d 940, 942 [2012], lv denied 19 NY3d 811 [2012]).
In any event, the affirmation is speculative and conclusory, as it opines that the Medical Center, through its radiologist, incorrectly interpreted the ultrasound studies as indicative of angiomyolipoma, rather than choriocarcinoma, without setting forth any basis for this opinion (see Ahmed v New York City Health & Hosps. Corp., 84 AD3d at 711; Dunn v Khan, 62 AD3d at 829). Further, the vague assertion that the Medical Center had a “duty to recommend an additional work-up, specifying studies that would more likely than not have resulted in the correct diagnosis,” was speculative and failed to raise a triable issue of fact, as this opinion failed to set forth the rationale for such additional studies or the specific additional studies the Medical Center should have recommended (see Ahmed v New York City Health & Hosps. Corp., 84 AD3d at 711; Dunn v Khan, 62 AD3d at 829). Similarly, the affirmation’s conclusion that, to the extent the Medical Center’s expert radiologist “avers otherwise, *46 ... he is mistaken” is insufficient to raise a triable issue of fact, as the affirmation again sets forth no basis for such opinion (see Ahmed v New York City Health & Hosps. Corp., 84 AD3d at 711; Dunn v Khan, 62 AD3d at 829). Accordingly, the Supreme Court properly granted that branch of the Medical Center’s motion which was for summary judgment dismissing the complaint insofar as asserted against it.
In support of her motion for summary judgment, DeCastro demonstrated her prima facie entitlement to judgment as a matter of law by submitting, inter alia, an affirmation from John L. Lovecchio, who is board certified in obstetrics and gynecology, and the sub-specialty of gynecological oncology. Lovecchio’s affirmation established that DeCastro did not depart from good and accepted standards of medical care. Specifically, Lovecchio averred that DeCastro provided the injured plaintiff with appropriate care and treatment during her visits on March 1, 2006, and March 15, 2006, “insofar as she obtained a proper medical history; conducted appropriate physical examinations; and arranged for appropriate follow up diagnostic test studies.” Moreover, since MacDonald’s pathology report, which was based on the dilation and curettage procedure performed at the Medical Center on April 3, 2006, indicated “essentially a normal finding” that did not indicate that the injured plaintiff “was in a potentially pre-cancerous state for development of choriocarcinoma,” Lovecchio opined, with a reasonable degree of medical certainty, that DeCastro’s failure to undertake any follow-up plan based on the pathology report was not a departure from good and accepted medical practice.
Lovecchio further averred that DeCastro’s act of ordering a follow-up human chorionic gonadotropin (hereinafter HCG) test for the injured plaintiff during the injured plaintiffs May 17, 2006, visit was within good and accepted standards of medical care. HCG testing on July 26, 2006, revealed that the injured plaintiff had an HCG level of 5, which both showed that she was not pregnant and “definitely ruled out the possible existence of a molar pregnancy and/or a choriocarcinoma up to this point.” Moreover, HCG testing between May and August 2006 followed a normal trajectory, inasmuch as the HCG levels decreased following the first pregnancy, which ended in a miscarriage, and increased at the beginning of the second pregnancy. Taken together, MacDonald’s pathology report and the HCG testing between May 2006 and August 2006 “consistently demonstrated that the [injured] [p]laintiff did not have a *47 molar pregnancy as a precursor to potential development of choriocarcinoma during this time span.” Furthermore, the injured plaintiff did not exhibit any signs or symptoms at any of the visits to DeCastro that should have caused DeCastro to suspect that the injured plaintiff was in a potentially precancer ous state. In sum, Lovecchio opined, with a reasonable degree of medical certainty, that DeCastro did not depart from good and accepted medical practice in her care and treatment of the injured plaintiff.
In opposition to DeCastro’s motion, the plaintiffs submitted an affirmation from Lawrence Ross, who did not specify his qualifications, except to describe himself as a “physician licensed to practice in NY . . . with more than 50 years’ experience,” who was “familiar with the standards of care for nurse practitioners.” Even assuming that Ross was a qualified expert on the practice of nurse practitioners, his affirmation was conclusory and speculative and, thus, failed to raise a triable issue of fact as to whether DeCastro departed from good and accepted medical practice. For example, although Ross opined that the statement in MacDonald’s pathology report—“[rjesults of histologic findings are discussed with Dr. Birnbaum on April 4, 2006. A differential diagnosis is renewed to interpret the histologic findings. Options for the followup care of the patient are discussed[ ]”—which he asserts DeCastro admits to having read,[9] was a “ ‘red flag’ that should alert the reader that something very unusual was going on,” he failed to explain why the statement was a red flag or specify the accepted standard of care. Instead, he merely concluded that DeCastro’s failure to follow up with a physician in light of the alleged red flag was an “obvious departure from the standard of care.” Accordingly, Ross’s opinion that DeCastro departed from good and accepted medical practice by not following up on the alleged red flag in the pathology report was speculative and conclusory, and, thus, did not raise a triable issue of fact (see Ahmed v New York City Health & Hosps. Corp., 84 AD3d at 711; Dunn v Khan, 62 AD3d at 829). Consequently, the Supreme Court should have granted that branch of DeCastro’s motion which was for summary judgment dismissing the complaint insofar as asserted against her.
Finally, we turn to Bliss’s motion for summary judgment. Bliss established, prima facie, through her affidavits and the affirmation of her expert, that she was not involved with *48 providing medical care to the injured plaintiff and, thus, did not depart from good and acceptable medical care with respect to the injured plaintiff (see Leon v Southside Hosp., 227 AD2d 384 [1996]; Tessier v New York City Health & Hosps. Corp., 177 AD2d 626 [1991]; Latiff v Wyckoff Hgts. Hosp., 144 AD2d 650 [1988]). In opposition, the plaintiffs did not raise a triable issue of fact as to whether Bliss provided medical care to the injured plaintiff or departed from good and accepted medical practice with respect to the injured plaintiff. The affirmation of the plaintiffs’ counsel is of no probative value (see Zuckerman v City of New York, 49 NY2d at 563). Moreover, to the extent the plaintiffs rely on the injured plaintiffs deposition, which Bliss submitted with her moving papers, in which she testified that she “believe[d]” that Bliss removed her staples following her caesarian section, such testimony does not raise a triable issue of fact as to whether Bliss treated her (see Latiff v Wyckoff Hgts. Hosp., 144 AD2d at 651). Further, even if Bliss did remove the injured plaintiffs staples, the plaintiffs did not submit an affidavit or affirmation from an expert that could have raised a triable issue of fact as to whether Bliss’s actions or inactions proximately caused the injured plaintiffs injuries (see Tessier v New York City Health & Hosps. Corp., 177 AD2d 626 [1991]). Indeed, the plaintiffs do not allege that the staples were improperly removed following the injured plaintiffs caesarian section or that the injured plaintiff sustained any injuries resulting from the removal of her staples. Accordingly, the Supreme Court properly granted that branch of Bliss’s motion which was for summary judgment dismissing the complaint insofar as asserted against her.
The plaintiffs’ remaining contentions are without merit.
Accordingly, the order is affirmed insofar as appealed from by the plaintiffs. In addition, the order is reversed insofar as appealed from by DeCastro, on the law, and that branch of DeCastro’s motion which was for summary judgment dismissing the complaint insofar as asserted against her is granted.

. In his deposition testimony, the defendant Eliot L. Birnbaum testified that WHC is a professional corporation, of which he and the defendant Robin Bliss are shareholders. The official name of WHC is Eliot L. Birnbaum, MD, PC, and it does business as WHC.

. The preliminary conference order dated October 14, 2008, in this action directed the parties as follows: “Expert Disclosure shall be provided by all parties pursuant to CPLR 3101.” Notably, the order did not set a specific *33 deadline for the filing of a note of issue and certificate of readiness and specifically exempted expert disclosure from the other discovery deadlines set forth in the order.

. We note that DeCastro moved for summary judgment on or about June 1, 2010. Thereafter, on or about June 11, 2010, she disclosed her expected expert trial witness, John L. Lovecchio, in response to the plaintiffs’ request pursuant to CPLR 3101 (d) (1) (i). Although DeCastro’s disclosure was prior to the plaintiffs’ deadline for opposing her motion for summary judgment, it was after the filing of the note of issue and certificate of readiness. Thus, under the circumstances, we find no reason to differentiate her procedural posture with respect to expert disclosure from that of the other defendants, none of whom disclosed their experts to the plaintiffs in response to the plaintiffs’ CPLR 3101 (d) (1) (i) request prior to the filing of the note of issue and certificate of readiness.

. The defendant Genevieve Kraus, a nurse practitioner, moved pursuant to CPLR 3211 to dismiss the derivative cause of action asserted by the injured plaintiffs husband insofar as asserted against her on the ground that he lacked standing to bring the cause of action, since the plaintiffs were not married during the period Kraus rendered treatment to the injured plaintiff. The plaintiffs did not oppose Kraus’s motion. In the order appealed from, the Supreme Court treated this motion as one, in effect, for summary judgment dismissing the complaint insofar as asserted against Kraus, and granted the motion. The plaintiffs do not appeal from this portion of the order.

. We disregard the plaintiffs’ error in denominating their experts’ affirmations as affidavits (see CPLR 2001).

. As noted previously, the next subdivision of the statute, CPLR 3101 (d) (1) (ii), contained in a subsequent amendment to CPLR 3101, governs the procedures by which expert witnesses may be examined before trial. We note that discovery of expert witnesses continues to be limited, since, unlike notice or fact witnesses, an expert witness is not automatically subject to deposition (see CPLR 3101 [d] [1] [ii]; Kane v Triborough Bridge & Tunnel Auth., 40 AD3d 1040, 1042 [2007]; Columbia Telecommunications Group v General Acc. Ins. Co. of Am,., 275 AD2d 340 [2000]; North Shore Towers Apts, v Zurich Ins. Co., 262 AD2d 468 [1999]). Rather, where special circumstances exist, a party may obtain an order permitting it to depose its adversary’s expert (see e.g. Dixon v City of Yonkers, 16 AD3d 542 [trial court providently exercised its discretion in denying defendants’ motion to quash subpoena directing defendants’ expert to appear for a deposition where expert examined key evidence before it was rendered unavailable to the plaintiff]).

. In light of the deadlines for motions for summary judgment to which parties must strictly adhere (see Brill v City of New York, 2 NY3d 648 [2004]), a motion for summary judgment made near the commencement of trial generally will not be considered.

. The plaintiffs do not assert that the motions for summary judgment were untimely or that the experts’ affirmations are infirm on procedural or technical grounds. Notably, the record does not indicate that the trial court, pursuant to its general authority to supervise disclosure, directed the parties to disclose, prior to the filing of the note of issue and certificate of readiness, or prior to moving for summary judgment, any experts they anticipated using in the context of the motion for summary judgment.

. In fact, DeCastro testified at her deposition that it was not her practice as a nurse practitioner to read such pathology reports.