Doe v Lenox Hill Hosp. (2026 NY Slip Op 50156(U))

[*1]

Doe v Lenox Hill Hosp.

2026 NY Slip Op 50156(U)

Decided on February 11, 2026

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 11, 2026
Supreme Court, New York County

John Doe, Plaintiff,

againstLenox Hill Hospital, NORTHWELL HEALTH, INC., MAJA ZARIC, M.D., Defendants.

Index No. 157606/2019

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 012) 246, 247, 248, 249, 250, 251, 252, 296, 297, 298, 301, 302 were read on this motion to PRECLUDE
The following e-filed documents, listed by NYSCEF document number (Motion 013) 253, 254, 255, 256, 257, 258, 299, 303, 304 were read on this motion to PRECLUDE.
The following e-filed documents, listed by NYSCEF document number (Motion 014) 259, 260, 261, 262, 263, 264, 265, 266, 267, 300, 305, 306 were read on this motion to PRECLUDE.
The following e-filed documents, listed by NYSCEF document number (Motion 015) 274, 275, 276, 277, 288, 289, 290, 291, 292, 293, 294, 295 were read on this motion to/forMISCELLANEOUS.
Upon the foregoing papers, and for the reasons set forth below, the motions are granted in part and denied in part as provided in the rulings section of this decision and order.
Defendants' Lenox Hill Hospital, Northwell Health, Inc., and Maja Zaric, M.D.'s (collectively, "Defendants") Motion Seq. 012 seeks, in substance, two categories of in limine relief: first, an order precluding Plaintiff John Doe ("Plaintiff") from offering proof or argument of compensatory and punitive damages on the remaining cause of action under Public Health Law article 27-F, including Public Health Law § 2782; and second, an order precluding Plaintiff from introducing evidence or advancing theories tied to causes of action previously dismissed on summary judgment, including proof offered solely to re-litigate those dismissed theories. Public Health Law § 2782 governs the confidentiality and disclosure of "confidential HIV related information," and § 2783 sets forth penalties and immunities, including a civil penalty of up to $5,000 per occurrence for certain unauthorized disclosures.
Defendants' Motion Seq. 013 seeks preclusion (or substantial limitation) of Plaintiff's proposed expert, Ken Ho, M.D. ("Dr. Ho"), an infectious disease physician, on the ground that his anticipated testimony purportedly (i) ventures beyond proper medical opinion into impermissible commentary on witness credibility and state of mind, and (ii) rests on a "code word" theory that Defendants contend is speculative and, to the extent it purports to be scientific, not shown to satisfy Frye's general-acceptance standard. Defendants submit that New York continues to apply Frye, and a Frye inquiry is distinct from the ordinary foundational requirement that expert opinion have a reliable basis and not be an analytical leap from data to conclusion.
Defendants' Motion Seq. 014 seeks preclusion of Plaintiff's identified treating providers—including Barry Lubetkin, Ph.D. ("Dr. Lubetkin"), a treating provider witness, and Steven Fochios, M.D. ("Dr. Fochios") another treating provider witness—principally under the medical-report exchange regime of 22 NYCRR § 202.17, and on related grounds of scope, foundation, and relevance. 22 NYCRR § 202.17 provides a structured mechanism for exchanging medical reports and authorizations in actions in which recovery is sought for personal injuries, disability, or death, and contains a preclusion provision for noncompliance absent good cause or an interest-of-justice finding by the trial judge.
Plaintiff's Motion Seq. 015 seeks an order authorizing the admission and use at trial of a certified English translation of certain Serbian-language text messages; Defendants oppose, arguing that translation accuracy and admissibility cannot be resolved categorically and must be established through appropriate foundation (stipulation, translator affidavit and, if needed, testimony). CPLR § 2101(b) requires that papers served or filed in a foreign language be accompanied by an English translation and a translator's affidavit as to qualifications and accuracy; the Uniform Rules further emphasize that foreign-language documents must be translated as required by CPLR § 2101(b) when relied upon in motion practice.BACKGROUND AND PROCEDURAL HISTORYThis action arises from Plaintiff's allegation that Defendants unlawfully disclosed confidential HIV-related information in violation of Article 27-F of the New York Public Health Law. The claim centers on a Serbian-language text message sent on or about February 22, 2018 by defendant Dr. Zaric to a nonparty mutual acquaintance, Branko Jovanovic. Plaintiff contends that the message's use of the term "immunosuppression" was intended as, and would have been understood to be, a reference to plaintiff's HIV status. Defendants dispute that characterization and maintain that the term referred instead to non-HIV medical conditions, including influenza-related complications and related health concerns.
Article 27-F was enacted to safeguard the confidentiality of HIV-related information and to prevent unauthorized disclosures that could expose affected individuals to stigma, discrimination, or other harms. Public Health Law § 2782 imposes strict confidentiality obligations with respect to "confidential HIV related information," and § 2783 provides enforcement mechanisms, including civil penalties and criminal sanctions for willful violations. Against that statutory backdrop, Plaintiff commenced this action asserting four causes of action: (1) violation of Article 27-F; (2) breach of physician-patient confidentiality; (3) failure to safeguard confidential information; and (4) negligent employment, retention, and supervision. Plaintiff sought extensive compensatory and punitive damages.
The parties engaged in extensive discovery. The record includes documentary evidence, deposition testimony, expert submissions, and competing accounts of the circumstances surrounding the February 2018 text message. Of particular significance were disputes regarding the linguistic meaning of the Serbian term used in the message, the context in which it was sent, the intended recipient's understanding of the term, and whether the communication conveyed, directly or indirectly, Plaintiff's HIV status.
Defendants moved for summary judgment. In a decision and order referenced by the parties as NYSCEF Doc. No. 232, this court undertook a comprehensive review of the record and substantially narrowed the case. The court rejected Plaintiff's contention that the summary judgment record conclusively established an unlawful disclosure of HIV-related information as a matter of law. At the same time, the court declined to dismiss the statutory claim entirely, finding that disputed issues of fact, including credibility determinations and contextual interpretation of the Serbian-language text message, required resolution by a factfinder.
However, the court granted summary judgment dismissing Plaintiff's tort-based causes of action. In doing so, the court determined that the evidentiary record did not support liability under theories of common-law confidentiality, negligent supervision, or related tort doctrines. As a consequence, the action now proceeds in a materially narrowed posture. The sole remaining cause of action is the statutory claim under Article 27-F, and the central issue for trial is sharply defined: whether the February 22, 2018 text message constituted a disclosure of "confidential HIV related information" within the meaning of Public Health Law § 2782.
The summary judgment ruling carries significant procedural and substantive consequences. First, it confines the trial to a single statutory theory. Second, it eliminates common-law negligence and supervision claims from the case. Third, it requires that any trial proof be carefully circumscribed to ensure that the jury is not invited to reconsider dismissed theories or to award relief inconsistent with the governing statutory framework.
It is against that narrowed backdrop that Defendants and Plaintiff now bring the present motions in limine.
ARGUMENTS
I. Motion Seq. 012
On Motion Seq. 012, Defendants contend that Public Health Law § 2783(1)(b) provides the exclusive statutory remedy for a proven violation of § 2782, namely, a civil penalty "not to exceed five thousand dollars for each occurrence," recoverable pursuant to Public Health Law § 12. They argue that the statutory text, read in conjunction with Article 27-F's structure and legislative history, does not authorize compensatory or punitive damages for an Article 27-F violation standing alone.
In support of that position, Defendants rely on well-established principles of statutory construction articulated by the Court of Appeals, including the directive that courts must give effect to a statute's plain and unambiguous language and may not expand its remedies beyond those expressly provided (see Colon v Martin, 35 NY3d 75, 78 [2020]; Town of Aurora v Village of E. Aurora, 32 NY3d 366, 372-373 [2018]; Cruz v TD Bank, N.A., 22 NY3d 61, 72 [2013]). Defendants invoke the maxim expressio unius est exclusio alterius, arguing that where the Legislature has expressly specified a civil penalty capped at five thousand dollars per [*2]occurrence, courts may not imply additional categories of relief such as compensatory damages.
Defendants further rely on Scaduto v Restaurant Assoc. Indus., (180 AD2d 458, 460 [1st Dept 1992]), in which the Appellate Division, First Department, declined to read compensatory damages into a statute that provided only equitable relief, and argue that a similar restraint is warranted here. They also cite Mazella v Beals (27 NY3d 694, 711 [2016]) and People v Scarola (71 NY2d 769, 777 [1988]) to emphasize that evidence relating to legally unavailable damages is irrelevant and unduly prejudicial.
Particularly significant in Defendants' analysis is the Appellate Division, Third Department's decision in Tatta v State of New York (20 AD3d 825 [3d Dept 2005]). In Tatta, the Appellate Division, Third Department, affirmed the imposition of a civil penalty under Public Health Law § 2783 for an unauthorized disclosure of HIV-related information and upheld the trial court's refusal to award compensatory damages for alleged emotional distress. Defendants argue that Tatta demonstrates that § 2783's civil penalty operates as the statute's operative remedy and that damages beyond that penalty are neither presumed nor automatically available. They emphasize that the Appellate Division, Third Department, treated the statutory penalty as the governing relief mechanism and did not recognize emotional distress damages as flowing directly from a violation of Article 27-F.
Defendants also address Plaintiff's reliance on the Appellate Division, Fourth Department's Doe v Roe decisions (190 AD2d 463 [4th Dept 1993]; 239 AD2d 878 [4th Dept 1997]). They argue that those cases recognized, in limited circumstances, the possibility of an implied private right of action but did not hold that compensatory damages are categorically available in every Article 27-F case, nor did they confront a procedural posture in which all common law claims had been dismissed on summary judgment. Defendants maintain that extending Doe v Roe to require a compensatory damages trial here would disregard the Legislature's express remedial structure and improperly enlarge the statute.
In addition to textual and precedential arguments, Defendants stress the procedural consequences of this court's prior summary judgment ruling. They contend that permitting Plaintiff to pursue compensatory damages would functionally resurrect tort-based theories that were dismissed as a matter of law, thereby undermining the law-of-the-case doctrine (see Bardi v Warren County Sheriff's Dept., 260 AD2d 763, 765 [3d Dept 1999]; Matter of Part 60 RMBS Put-Back Litig., 195 AD3d 40, 47 [1st Dept 2021]). According to Defendants, the remaining trial question is narrow: whether the Serbian-language text message constituted a disclosure of confidential HIV-related information. They argue that transforming that limited inquiry into a wide-ranging compensatory damages trial would blur doctrinal boundaries and invite jury confusion.
Finally, Defendants seek a tailored order preventing Plaintiff from presenting proof aimed solely at re-litigating dismissed claims or reframing the case as one concerning negligent supervision, institutional misconduct, or systemic privacy-policy failures. They assert that such proof would be irrelevant to the surviving statutory claim and unduly prejudicial under settled evidentiary principles.
Plaintiff opposes Motion Seq. 012 by invoking the Court of Appeals' implied right framework articulated in Sheehy v Big Flats Community Day (73 NY2d 629 [1989]). Plaintiff relies heavily on decisions from the Appellate Division, Fourth Department, most notably Doe v Roe (190 AD2d 463 [4th Dept 1993]; 239 AD2d 878 [4th Dept 1997]), which recognized that a [*3]private plaintiff may pursue damages, including punitive damages in appropriate circumstances, for unlawful disclosure of confidential HIV-related information under Article 27-F. Plaintiff argues that limiting an injured party to the civil-penalty mechanism would frustrate the statute's remedial purpose and diminish its deterrent effect. Plaintiff further contends that Article 27-F's immunity provisions presuppose the existence of civil liability in damages, and thus reflect legislative contemplation of private remedies beyond the statutory penalty.
With respect to evidentiary scope, Plaintiff maintains that although certain common-law claims were dismissed, evidence relating to access logs, institutional policies, internal investigations, and compliance measures may remain probative of whether a prohibited disclosure occurred and of the seriousness and character of the alleged wrongdoing. Plaintiff argues that categorical exclusions at the in limine stage would be premature and impractical, given the factual overlap between the dismissed claims and the surviving statutory theory.
II. Motion Seq. 013
On Motion Seq. 013, Defendants challenge the admissibility of the proposed testimony of Plaintiff's expert, Dr. Ho. Defendants contend that Dr. Ho's anticipated opinions exceed the proper scope of expert assistance and intrude upon the jury's role. Specifically, Defendants argue that any testimony purporting to interpret what Defendants intended to communicate, to "decode" the meaning of the Serbian text message, to characterize it as a coded reference to HIV status, or to assess the credibility of witnesses would improperly invade the province of the jury.
Defendants further assert that, to the extent Plaintiff advances a "code word" theory under the guise of scientific expertise, there has been no showing that such a theory satisfies applicable standards of reliability or general acceptance. Conversely, if the theory is not scientific in nature, Defendants argue that it amounts to speculation untethered to any recognized expert methodology and therefore fails to satisfy the threshold requirements for admissible expert testimony.
Plaintiff responds that Dr. Ho is well qualified by training and experience to offer medical opinions concerning immunosuppression and HIV-related medical terminology. Plaintiff maintains that such testimony lies beyond the ordinary knowledge of lay jurors and will assist the factfinder in understanding the medical meaning of the term "immunosuppression" and the conditions commonly associated with it. Plaintiff characterizes Defendants' "novel science" argument as a misrepresentation of the proffered testimony, which Plaintiff describes as a straightforward medical explanation rather than a speculative interpretive exercise. According to Plaintiff, Dr. Ho's testimony will illuminate the medical context necessary for the jury to assess whether the text message conveyed confidential HIV-related information.
III. Motion Seq. 014
On Motion Seq. 014, Defendants argue that Plaintiff's disclosures concerning treating providers fail to comply with the requirements of 22 NYCRR § 202.17 and that preclusion is warranted. Defendants emphasize that the action is at a late procedural stage, that the issues for trial have been substantially narrowed, and that treating-provider testimony risks devolving into impermissible compensatory-damages proof or collateral disputes unrelated to the remaining statutory claim. In Defendants' view, the rule requires specific and timely disclosure of the [*4]substance of anticipated testimony, and failure to comply justifies preclusion, particularly where surprise or prejudice may result.
Plaintiff counters that 22 NYCRR § 202.17 is either inapplicable under the circumstances presented or has been satisfied through the exchange of medical records and narrative materials. Plaintiff further argues that Defendants waived any objection by failing to move against the note of issue or by relying on treating-provider materials during earlier motion practice. Plaintiff maintains that treating witnesses may properly testify concerning Plaintiff's medical condition and the medical meaning of "immunosuppression," which Plaintiff contends bears directly on the central issue of whether the text message conveyed confidential HIV-related information. According to Plaintiff, such testimony is relevant to the statutory claim and does not improperly expand the case.
IV. Motion Seq. 015
On Motion Seq. 015, Plaintiff seeks authorization to admit and use an English translation of Serbian text messages. Plaintiff argues that the translation is certified and that Defendants produced the underlying messages in discovery, thereby triggering the rebuttable presumption of authenticity set forth in CPLR 4540-a when such material is offered by an adverse party. Plaintiff further contends that Defendants' prior reliance on the translation during summary judgment practice should preclude them from objecting to its admissibility at trial.
Defendants respond that the authenticity of the underlying messages is distinct from the accuracy and admissibility of a translation. They assert that CPLR § 4540-a does not self-authenticate a third-party translation and that disputes regarding translation accuracy must be addressed through stipulation or through proper evidentiary foundation, including a translator's affidavit or testimony. Defendants point to CPLR § 2101(b), which contemplates translator affidavits for foreign-language documents submitted in court proceedings, as well as the Uniform Rules' similar requirements. In Defendants' view, a blanket pretrial ruling declaring the translation admissible would bypass necessary foundational safeguards and risk presenting the jury with contested interpretive material without appropriate evidentiary vetting.
DISCUSSION
I. Motion Seq. 012
The central question presented by Motion Seq. 012 is not merely evidentiary. It is remedial. Specifically, the court must determine whether, in the present procedural posture and under the governing statutory framework, Plaintiff may pursue compensatory damages and punitive damages on the remaining claim under Article 27-F of the Public Health Law.
a. Compensatory Damages
Public Health Law § 2782 establishes strict confidentiality protections for "confidential HIV related information" and carefully circumscribes the circumstances under which disclosure is permitted. Public Health Law § 2783(1)(b) provides that a person who discloses confidential HIV-related information in violation of § 2782 "shall be subject to a civil penalty not to exceed [*5]five thousand dollars for each occurrence," and further provides that such penalty may be recovered in the manner set forth in Public Health Law § 12. Public Health Law § 12, in turn, frames civil penalties as liabilities "to the people of the state," enforceable in an action brought by the Commissioner.
Nothing in §§ 2782 or 2783 expressly authorizes compensatory damages. Nor does § 2783 employ language commonly used by the Legislature when it intends to create a compensatory damages remedy, such as authorizing recovery of "actual damages" or "the greater of statutory or actual damages."
Although statutory silence does not invariably foreclose an implied private right of action (Sheehy v Big Flats Community Day, 73 NY2d 629, 633 to 634 [1989]), the scope of available remedies must be assessed in light of the statutory text, structure, and legislative design. The Court of Appeals has repeatedly cautioned that where the Legislature has specified particular remedies, courts may not expand the statute by implication (see Colon v Martin, 35 NY3d 75, 78 [2020]); Town of Aurora v Village of E. Aurora, 32 NY3d 366, 372-373 [2018]; Cruz v TD Bank, N.A., 22 NY3d 61, 72 [2013]). The maxim expressio unius est exclusio alterius operates not to create unexpressed rights, but to restrain unwarranted expansion (see Town of Aurora, 32 NY3d at 372-373).
Article 27-F reflects a calibrated enforcement scheme. It provides strict confidentiality protections, a capped civil penalty for violations, and criminal sanctions for willful misconduct. It does not read as a free-standing compensatory damages statute. The Legislature chose to frame § 2783 as a "penalties and immunities" provision, not as a damages provision.
The Appellate Division, Third Department's decision in Tatta v State of New York, 20 AD3d 825 (3d Dept 2005), is particularly instructive. In Tatta, the claimant sought statutory and compensatory damages following an unauthorized disclosure of HIV-related medical information. The Court of Claims imposed a civil penalty under § 2783 but declined to award emotional distress damages, and the Appellate Division, Third Department, affirmed. The court treated the § 2783 civil penalty as the operative statutory remedy and analyzed compensatory recovery only through the lens of an independent tort theory requiring distinct elements and competent medical proof (see Tatta, 20 AD3d at 826-827). The decision makes clear that proof of emotional harm does not automatically convert the civil-penalty framework into a compensatory damages regime. Damages beyond the statutory penalty require an independent, viable damages cause of action.
That principle carries particular force in this case. On summary judgment, this court dismissed Plaintiff's tort-based causes of action, including those that could have supported compensatory damages under common law theories. As a result, the case now proceeds solely on a statutory claim under Article 27-F. To permit Plaintiff to present compensatory damages evidence under the remaining statutory claim would, in practical effect, reintroduce dismissed theories through the back door and blur the distinction between a statutory penalty proceeding and a tort damages trial.
The law-of-the-case doctrine reinforces that conclusion. An order granting summary judgment constitutes a disposition on the merits and binds the parties in subsequent proceedings (see Bardi v Warren County Sheriff's Dept., 260 AD2d 763, 765 [3d Dept 1999]; Matter of Part 60 RMBS Put-Back Litig., 195 AD3d 40, 47 [1st Dept 2021]). The court will not allow damages evidence to function as an indirect means of relitigating dismissed claims.
Plaintiff relies principally on the Appellate Division, Fourth Department's decisions in Doe v Roe, 190 AD2d 463 (4th Dept 1993), and 239 AD2d 878 (4th Dept 1997). Those cases recognized the possibility of private enforcement and, in an appropriate case, punitive damages. They do not, however, hold that compensatory damages are categorically or presumptively available in every Article 27-F case.[FN1]
Nor did they arise in a posture where common law damages claims had been dismissed before trial. The reasoning of Doe v Roe cannot be imported mechanically into this post-summary-judgment setting without collapsing the remedial distinction articulated in Tatta and ignoring the narrowed scope of this action.
The question here is not whether Article 27-F may ever support a damages claim in any context. It is whether, after dismissal of the damages-capable tort claims, the remaining statutory claim supplies compensatory damages as a matter of law. The court concludes that it does not.
Evidence offered to establish compensatory damages, including emotional distress damages, is therefore irrelevant to the remaining statutory claim and presents a substantial risk of unfair prejudice and jury confusion (see People v Scarola, 71 NY2d 769, 777 [1988]); Mazella v Beals, 27 NY3d 694, 711 [2016]).
b. Punitive Damages
The court reaches a different conclusion with respect to punitive damages. Punitive damages do not serve a compensatory function. They are designed to punish egregious conduct and deter similar wrongdoing (see Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 203-204 [1990]). The Appellate Division, Fourth Department, in Doe v Roe recognized that punitive damages may, in an appropriate case, be consistent with Article 27-F's purposes where the proof demonstrates willful, wanton, or morally culpable conduct (see Doe v Roe, 190 AD2d at 470.
Unlike compensatory damages, punitive damages do not require the court to treat Article 27-F as a substitute tort regime. They operate, if warranted, as an additional sanction for conduct that exceeds ordinary negligence and reflects a high degree of moral culpability. The statutory text does not expressly authorize punitive damages, but neither does it expressly foreclose them. In this limited respect, the reasoning of Doe v Roe is persuasive.
Punitive damages remain an extraordinary remedy. They are never presumed and require proof of conduct that evinces willful or wanton disregard of statutory obligations. The court does not determine at this juncture whether Plaintiff can meet that demanding burden. It holds only that punitive damages are not categorically barred as a matter of law and may be pursued if supported by legally sufficient proof at trial. Defendants remain free to challenge the sufficiency of that proof through appropriate motions and requests for limiting instructions.
c. Evidence Relating to Dismissed Causes of Action
Defendants are correct that Plaintiff may not relitigate dismissed causes of action or present theories of liability eliminated by summary judgment. Evidence offered solely to invite the jury to punish Defendants for dismissed theories, or to decide duties not submitted, would be irrelevant and unduly prejudicial (see Scarola, 71 NY2d at 777).
At the same time, not all evidence touching on internal conduct is automatically inadmissible. In a case that turns on what was communicated, to whom, and in what context, certain evidence such as access records, contemporaneous communications, or record-handling documentation may overlap with the remaining statutory question or bear on issues relevant to punitive damages, including knowledge, notice, or willfulness. The admissibility of such evidence must therefore be assessed in context, with attention to foundation, purpose, and the risk of unfair prejudice or collateral mini-trials (see People v Frumusa, 29 NY3d 364, 372 [2017]).
The court will enforce strict limits to ensure that the trial does not devolve into a de facto case about negligent supervision, internal disciplinary adequacy, or institutional misconduct divorced from the remaining statutory claim.
Ruling
Accordingly, Motion Seq. 012 is resolved as follows:
Compensatory damages. Plaintiff shall not offer evidence, expert testimony, lay testimony, argument, or proposed jury instructions seeking compensatory damages, whether labeled emotional distress, reputational injury, economic loss, or otherwise, on the remaining Public Health Law Article 27-F claim.
Punitive damages. Plaintiff may seek punitive damages only if supported by legally [*6]sufficient proof at trial of willful, wanton, or morally culpable conduct. No evidence shall be admitted solely for the purpose of establishing compensatory damages.
Evidence tied to dismissed causes of action. Plaintiff shall not refer to, argue, or suggest that dismissed claims remain for jury determination and shall not request jury instructions or verdict sheet submissions on dismissed theories. Evidence offered solely to prove a dismissed theory is excluded. Evidence that overlaps and is offered for a permissible purpose tied to the remaining statutory issue or to punitive damages may be admitted subject to proper foundation, specific objections, and the court's balancing discretion to prevent unfair prejudice, confusion, or collateral litigation.
A limiting instruction consistent with these rulings shall be settled at the charge conference.
II. Motion Seq. 013
Motion Seq. 013 concerns the permissible scope of expert testimony to be offered by Plaintiff through Dr. Ho. The motion requires the court to distinguish between medical expertise that may assist the jury and impermissible opinion testimony that would intrude upon the jury's exclusive role as factfinder.
a. Governing Standards
Expert testimony is admissible where it would "help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" (De Long v County of Erie, 60 NY2d 296, 307 [1983]). The touchstone is assistance, not displacement. The expert may aid the factfinder, but may not supplant it.
New York continues to adhere to the standard articulated in Frye v United States (293 F 1013 [DC Cir 1923]), which requires that novel scientific theories or techniques be generally accepted in the relevant scientific community before they may be admitted into evidence (see People v Wesley, 83 NY2d 417, 422 [1994]; People v LeGrand, 8 NY3d 449, 458 [2007]). The Frye inquiry is limited to whether the scientific principle or methodology is generally accepted. It is distinct from questions of foundational reliability, which concern whether accepted methods were properly applied to the facts of the case (see Wesley, 83 NY2d at 422-423).
Even where expert testimony satisfies admissibility standards, courts must guard against permitting experts to become conduits for credibility determinations or state-of-mind conclusions that are within the ordinary competence of jurors. The Court of Appeals has made clear that expert testimony may not invade the province of the jury by expressing opinions on a party's intent, credibility, or the ultimate truthfulness of testimony (see People v Cronin, 60 NY2d 430, 433-434 [1983]; People v Ciaccio, 47 NY2d 431, 436 [1979]). The jury remains the sole arbiter of intent and credibility.
These principles are particularly important here, where the surviving issue at trial is narrow: whether a specific Serbian-language text message conveyed confidential HIV-related information within the meaning of Public Health Law Article 27-F. As this court has already ruled on Motion Seq. 012, the trial is not a tort damages proceeding, but a focused statutory liability determination, with punitive damages available only upon legally sufficient proof of willful or morally culpable conduct. Expert testimony must be confined to that framework.
b. Application to Dr. Ho's Proposed Testimony
On the present record, the court is satisfied that Dr. Ho is qualified, by education and professional experience, to testify as a medical expert concerning the clinical meaning of "immunosuppression," the medical conditions that can cause immunosuppression, and the contexts in which physicians use that term in clinical communication. Such testimony falls squarely within the category of expert assistance contemplated by De Long. The medical concept of immunosuppression, including its relationship to HIV and to numerous non-HIV conditions, is not necessarily within the common knowledge of lay jurors. Properly confined medical testimony may therefore assist the jury in understanding whether the term "immunosuppression," standing alone, is medically synonymous with HIV status or instead encompasses a broader range of clinical conditions.
To that limited extent, Dr. Ho's testimony is admissible. However, Defendants correctly identify categories of proposed testimony that would be improper if offered as anticipated.
First, any opinion that the text message used "immunosuppression" as a "code word" for HIV, or that Defendant physician intended to convey Plaintiff's HIV status to the recipient, would exceed the permissible scope of medical expertise. Such opinions are not medical diagnoses. They are inferences concerning intent and communicative purpose. New York courts consistently prohibit expert testimony that expresses conclusions regarding a party's intent or that effectively instructs the jury how to interpret disputed communications (see Cronin, 60 NY2d at 433-434; Ciaccio, 47 NY2d at 436). The interpretation of what a speaker meant, and whether a communication conveyed confidential information, is for the jury to decide based on the evidence. An expert may not substitute his speculative interpretation of motive or purpose for the jury's own evaluation.
Second, to the extent Plaintiff seeks to elicit testimony interpreting Serbian language, idiom, or cultural nuance, the record does not demonstrate that Dr. Ho possesses linguistic expertise qualifying him to render such opinions. Expert testimony must be grounded in demonstrated expertise (see Matott v Ward, 48 NY2d 455, 459 [1979]). Absent a proper foundation establishing specialized linguistic qualification, such testimony would fall outside the permissible scope of Dr. Ho's medical expertise.
Third, Plaintiff has not established that any proposed "code word" theory constitutes a generally accepted scientific methodology within an identifiable relevant scientific community. If Plaintiff intends to present the notion that physicians use particular medical terminology as coded substitutes for HIV disclosure as a scientific proposition rather than as ordinary inference, such a theory would implicate Frye. On the present papers, however, no generally accepted scientific methodology has been identified. The court will not admit expert testimony premised upon a novel or unarticulated scientific theory absent the showing required by Wesley and LeGrand.
The court notes that it does not, at this juncture, find that a Frye hearing is required. The court is not admitting any purported "code word" methodology as scientific evidence. If Plaintiff later seeks to introduce a specifically defined scientific theory beyond ordinary medical explanation, Plaintiff must make a threshold proffer demonstrating that the testimony involves novel science and that general acceptance can be shown. Absent such a showing, no Frye hearing is warranted.
This ruling is consistent with the court's determination on Motion Seq. 012. Because [*7]compensatory damages are unavailable and punitive damages require proof of willful or morally culpable conduct, expert testimony must not devolve into an effort to portray Defendants as malicious actors through interpretive speculation. The jury's task is to determine whether a disclosure occurred and, if so, whether the evidence supports punitive sanctions under the high standard articulated in Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 203-204 (1990). Expert testimony must illuminate medical context, not supply conclusions about intent.
Ruling
Accordingly, Motion Seq. 013 is granted in part and denied in part as follows:
Permitted Medical Testimony. Dr. Ho may testify regarding the medical meaning of "immunosuppression," the range of medical conditions that can cause immunosuppression, general clinical usage of the term, and any properly disclosed medical opinions that assist the jury on issues beyond common knowledge.
Excluded Testimony. Dr. Ho shall not testify that Defendants used "immunosuppression" as a code for HIV; that Defendant physician intended to disclose HIV status; that any witness is truthful or untruthful; or that Defendants acted willfully, maliciously, or with the mental state required for punitive damages. Such testimony invades the province of the jury and exceeds the proper scope of medical expertise.
Frye Procedure. No Frye hearing is ordered at this time. If Plaintiff seeks to introduce a novel scientific methodology beyond ordinary medical explanation, Plaintiff must promptly request a Frye hearing and make the threshold showing required under New York law.
A limiting instruction consistent with this ruling shall be settled at the charge conference.
III. Motion Seq. 014
Motion Seq. 014 concerns the permissible scope of testimony from Plaintiff's treating providers and whether preclusion is warranted under 22 NYCRR § 202.17 and related disclosure principles. With trial scheduled to commence on February 17, 2026, the court addresses this motion in a manner that is both legally sound and practically workable, mindful that the orderly administration of the trial calendar must not be compromised by further collateral exchanges.
a. Governing Disclosure Standards
In personal injury and related actions, 22 NYCRR § 202.17 governs the exchange of medical reports and authorizations. The rule provides that where a party fails to serve medical reports in compliance with its requirements, the court "may preclude" the testimony of a treating or examining physician at trial, absent good cause or an interest-of-justice determination (22 NYCRR § 202.17[h]). The purpose of the rule is to prevent surprise and to ensure that trial proceeds on a fair and disclosed record (see Rivers v Birnbaum, 102 AD3d 26, 42 [2d Dept 2012]).
At the same time, the Court of Appeals has recognized the practical distinction between retained litigation experts and treating providers whose testimony is grounded in contemporaneous medical records generated in the ordinary course of treatment. Where treating physicians' records and reports have been exchanged pursuant to CPLR § 3121 and 22 NYCRR § 202.17, the absence of a formal CPLR § 3101(d) expert disclosure does not automatically [*8]require preclusion (Gonzalez v 98 Mag Leasing Corp., 95 NY2d 124, 129 [2000]). The trial court retains broad discretion to limit testimony to avoid surprise and to confine the witness to matters fairly disclosed (see Rivers, 102 AD3d at 42).
These principles must be applied here in light of the court's prior rulings.
b. Application in Light of the Narrowed Trial
The trial that will begin on February 17, 2026 is not a broad personal injury damages proceeding. It is a narrowly framed statutory confidentiality case under Public Health Law Article 27-F. As set forth in the court's ruling on Motion Seq. 012, compensatory damages are not available in this procedural posture. The only potential monetary remedy for the jury's consideration is a statutory civil penalty under Public Health Law § 2783(1)(b), and punitive damages only if supported by legally sufficient proof of willful or morally culpable conduct.
That remedial ruling necessarily limits the scope of permissible treating-provider testimony. Treating witnesses may not be used as vehicles to present emotional distress narratives, reputational injury claims, or other compensatory damages theories that have been precluded as a matter of law. Allowing such testimony would contravene the court's prior ruling and risk confusing the jury as to the issues properly before it (see People v Scarola, 71 NY2d 769, 777 [1988]; Mazella v Beals, 27 NY3d 694, 711 [2016]).
At the same time, not all treating-provider testimony is irrelevant. The central issue for trial is whether a particular communication conveyed confidential HIV-related information. Limited testimony concerning Plaintiff's medical status, the medical meaning of "immunosuppression," and the clinical contexts in which that term may or may not signify HIV may assist the jury in resolving the statutory question. Such testimony is consistent with the evidentiary framework articulated in the court's ruling on Motion Seq. 013.
Accordingly, the court declines to impose categorical preclusion. Instead, it imposes strict and immediate scope limitations to ensure trial efficiency and compliance with the governing disclosure rules.
c. Disclosure and Preclusion Analysis
To the extent 22 NYCRR § 202.17 applies, Plaintiff bears the burden of demonstrating that treating-provider opinions are grounded in records and reports previously exchanged. The rule's preclusion remedy is discretionary, not automatic (22 NYCRR § 202.17[h]), and is guided by considerations of surprise and prejudice (see Rivers, 102 AD3d at 42).
Here, because the trial is imminent, the court will not entertain extended meet-and-confer processes or additional rounds of disclosure. The record has been developed over years of litigation. The scope of trial has been narrowed by summary judgment and by the court's in limine rulings. Further iterative submissions would serve only to disrupt the trial calendar.
Accordingly, the court adopts a pragmatic rule: treating-provider testimony will be permitted only to the extent that the substance of the proposed testimony is reflected in medical records or reports previously exchanged. No new opinions, causation theories, or damages analyses may be introduced under the guise of treatment testimony.
Ruling
Motion Seq. 014 is resolved as follows:
No Categorical Preclusion. Defendants' request for blanket preclusion of all treating-provider testimony is denied.
Permitted Scope of Treating Testimony. Plaintiff may call treating providers, including Barry Lubetkin, Ph.D. and Dr. Fochios, to testify strictly as follows:
(a) Treatment rendered;(b) Observations, diagnoses, and medical information contemporaneously recorded in treatment records;(c) Medical explanations relevant to the clinical meaning of "immunosuppression" and related medical context, insofar as such testimony bears directly on whether the disputed communication conveyed confidential HIV-related information.Excluded Testimony. Treating providers shall not testify, in the presence of the jury, regarding:
(a) Emotional distress, humiliation, reputational injury, or other compensatory damages narratives;(b) Opinions concerning economic loss or damages;(c) Speculative causation theories regarding psychological or medical consequences of the alleged disclosure;(d) Any opinions not reflected in previously exchanged medical records or reports.No Further Submissions. The court will not entertain additional letter motions, meet-and-confer certifications, or supplemental disclosures on this subject absent extraordinary circumstances. Objections at trial shall be made contemporaneously and addressed summarily. The court will not adjourn trial to accommodate expanded disclosures that could have been raised earlier.
Preclusion for Undisclosed Opinions. If a treating witness offers testimony that exceeds the limits set forth above or is unsupported by previously exchanged records, the court will sustain objection and may strike such testimony.
Limiting Instruction
A limiting instruction shall be given substantially as follows:
"You have heard testimony from treating providers. That testimony is admitted only for the limited purpose of explaining medical terms and treatment context relevant to the issues you must decide. You must not consider such testimony as proof of compensatory damages, because compensatory damages are not part of your determination."IV. Motion Seq. 015
Motion Seq. 015 concerns whether the court should pre-authorize the admission of an English translation of Serbian-language text messages that are central to the remaining statutory claim under Public Health Law Article 27-F.
Because the meaning of the disputed communication lies at the core of this case, the trial must proceed on an intelligible and reliable record. The issue presented is not whether the jury may consider an English translation. It plainly must. The issue is under what evidentiary [*9]conditions such translation may be received as proof.
a. Governing Legal Principles
CPLR § 2101(b), though framed as a rule governing papers served or filed, embodies a broader evidentiary principle: when a foreign-language affidavit or exhibit is submitted in a judicial proceeding, it must be accompanied by an English translation and an affidavit of the translator stating qualifications and attesting to the accuracy of the translation. That requirement reflects the judiciary's longstanding insistence upon reliability and accountability in the translation process.
Plaintiff invokes CPLR § 4540-a, which provides a rebuttable presumption of authenticity for material produced by a party in response to a demand for material authored or otherwise created by that party when offered by an adverse party. CPLR § 4540-a addresses authenticity of authorship. It does not address translation accuracy.
Authenticity and accuracy are analytically distinct concepts. A Serbian-language text message may be presumed authentic under CPLR § 4540-a as an authored communication. That presumption does not extend to the correctness of an English translation prepared by a third party. Before a translation may be admitted as evidence rather than used merely as a demonstrative aid, the proponent must establish that it is a fair and accurate rendering of the original (see CPLR § 2101[b]).
Courts have repeatedly recognized that translation disputes may implicate nuance, idiom, and context. Admission without foundation would risk presenting the jury with an interpretive conclusion rather than the underlying evidence.
b. Waiver and Prior Summary Judgment Usage
Plaintiff argues that Defendants relied upon an English translation during summary judgment practice and should therefore be foreclosed from objecting at trial.
The court declines to adopt a categorical waiver rule. Use of a translation in motion practice, often for practical necessity to allow judicial review of foreign-language materials, does not constitute a binding evidentiary concession that the translation is admissible at trial without foundation. Motion practice is conducted on papers. Trial evidence is governed by stricter admissibility standards.
The court is mindful that positions taken in dispositive motion practice may bear on credibility and practical narrowing of disputes. However, reliance upon a translation for summary judgment purposes does not eliminate the foundational requirement for admissibility before a jury. The reliability safeguards reflected in CPLR § 2101(b) exist precisely to ensure that foreign-language evidence presented to a jury rests on competent translation.
c. Application
Trial begins on February 17, 2025. The court will not permit this case to devolve into pretrial satellite litigation over translation mechanics. At the same time, the jury must not be asked to resolve liability based on an uncertified or inadequately supported translation.
Accordingly, the court adopts a structured, immediate, and practical procedure that [*10]preserves both reliability and trial efficiency.
Ruling
Motion Seq. 015 is resolved as follows:
Blanket Pre-Authorization Denied. Plaintiff's request for a blanket order pre-authorizing admission of the English translation without exhibit-specific foundation is denied.
Foundation Requirement. Any English translation offered as substantive evidence must be supported by a translator affidavit establishing the translator's qualifications and attesting that the translation is a fair and accurate rendering of the original Serbian text, consistent with the principles reflected in CPLR § 2101(b).
Authenticity Distinction. To the extent the underlying Serbian-language messages are produced by Defendants and fall within CPLR § 4540-a, authenticity of authorship may be presumed unless rebutted. That presumption does not extend to the translation itself.
Trial Procedure.
(a) If the parties stipulate to the accuracy of a translation before the jury is sworn, the stipulated translation may be admitted subject to the ordinary rules of evidence.(b) If no stipulation is reached, the proponent shall lay foundation outside the presence of the jury through the translator affidavit and, if necessary, brief foundational testimony. The court will resolve admissibility promptly and summarily.(c) The court will not adjourn trial for additional translation exchanges. Any objections must be raised contemporaneously at trial and will be addressed in real time.Demonstrative Use Pending Admission. Unless and until admitted, an English translation may be shown to the jury solely as a demonstrative aid to assist in understanding testimony, accompanied by an instruction that the original Serbian text controls and that the translation is admitted only upon proper foundation.
No Further Submissions. The court will not entertain additional letter motions or extended meet-and-confer certifications on this issue. The record is sufficiently developed. Any remaining dispute will be resolved through concise foundational presentation at trial.
Limiting Instruction
A limiting instruction shall be given substantially as follows:
"You may be shown English translations of Serbian-language text messages. The original Serbian text is the evidence. An English translation may be considered as evidence only if the court determines that the required foundation has been established. If a translation is used solely to assist you in understanding testimony, you must rely on the admitted evidence in reaching your verdict."
This ruling ensures that the jury will have a clear and reliable record, while preserving the scheduled trial date and preventing unnecessary pretrial maneuvering.
CONCLUSION
Taken together, these rulings reflect a single, consistent principle: this trial must proceed within the legal and procedural boundaries established by statute, by this court's prior summary judgment determination, and by the settled rules governing expert testimony and evidentiary foundation. Article 27-F supplies a carefully structured confidentiality regime, including a defined civil penalty and, where supported by legally sufficient proof, the possibility of punitive sanctions. It does not, in the posture of this case, authorize a compensatory damages trial. Nor does it permit expert witnesses to supply conclusions regarding intent or credibility, or treating providers to expand the proceeding into a narrative of personal injury damages that have already been dismissed as a matter of law.
At the same time, the court has declined to impose categorical exclusions that would deprive the jury of relevant and properly grounded evidence bearing on the statutory question it must decide. Medical testimony explaining the meaning of "immunosuppression," limited treating-provider context grounded in disclosed records, and properly authenticated and accurately translated documentary evidence may all assist the jury, provided they remain within the disciplined framework set forth above.
With trial imminent, these rulings are intended to ensure clarity, efficiency, and fairness. They define the permissible scope of proof; they prevent re-litigation of resolved issues; they protect the jury's factfinding role; and they preserve the integrity of the statutory scheme. The parties are expected to proceed accordingly. No further submissions will be entertained absent extraordinary circumstances.
Accordingly, it is hereby:
ORDERED that Motion Seq. 012 is granted to the extent that compensatory damages are precluded and denied to the extent that punitive damages may be sought upon legally sufficient proof; and it is further
ORDERED that Motion Seq. 013 is granted in part and denied in part consistent with the limitations set forth above; and it is further
ORDERED that Motion Seq. 014 is granted to impose strict scope limitations on treating-provider testimony and otherwise denied; and it is further
ORDERED that Motion Seq. 015 is granted only to the extent that translations may be admitted upon proper foundation and denied to the extent it seeks blanket pre-admission; and it is further
ORDERED that no further submissions shall be made on these motions absent leave of court, and any trial objections shall be addressed contemporaneously during trial.
This constitutes the decision and order of the court.
02/11/2026
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:The court is mindful that Doe v Roe (190 AD2d 463 [4th Dept 1993] and 239 AD2d 878 [4th Dept 1997]) were decided during a profoundly different historical moment. In the early 1990s, at the height of the HIV/AIDS epidemic, individuals living with HIV faced extraordinary stigma, discrimination, and social exclusion. Courts were confronted not only with statutory interpretation questions, but with the urgent human consequences of unlawful disclosure in an era when misinformation and fear were widespread and often devastating. It is therefore unsurprising that the Appellate Division, Fourth Department, operating in that context, read Article 27-F expansively to ensure that meaningful remedies were available to deter disclosure and to vindicate the dignity of affected individuals. That historical setting warrants acknowledgment and respect.
However, judicial interpretation must also remain attentive to statutory text, structural design, and subsequent doctrinal development. The Appellate Division, Third Department's later decision in Tatta v State of New York (20 AD3d 825 [3d Dept 2005]) reflects a more textually grounded and remedially disciplined approach to Article 27-F. Tatta treated the civil penalty provision of § 2783 as the operative statutory remedy and distinguished that penalty from independent tort theories that might support compensatory recovery. In doing so, the court did not diminish the seriousness of confidentiality violations; rather, it respected the Legislature's chosen enforcement structure.
In the present procedural posture—after dismissal of Plaintiff's common law damages claims—it is Tatta that more closely aligns with the statutory framework and the current state of the law. Compassion for the harms historically associated with HIV-related disclosures does not authorize the court to expand a carefully calibrated remedial statute beyond its text. The Legislature has provided defined civil penalties and criminal sanctions to address violations of Article 27-F. The court's role is to apply that framework faithfully, not to enlarge it in response to the understandable gravity of the subject matter.